CINCINNATI BAR ASSOCIATION *v.* WEAVER.

[Cite as *Cincinnati Bar Assn. v. Weaver,*
102 Ohio St.3d 264, 2004-Ohio-2683.]

(No. 2003–1072—Submitted March 15, 2004—Decided June 9, 2004.)

---

**Per Curiam.**

{¶ 1} Respondent, Paul M. Weaver III of Cincinnati, Ohio, Attorney Registration No. 0067277, was admitted to the practice of law in Ohio in 1996. In an amended complaint filed on October 11, 2002, relator charged respondent with seven counts of professional misconduct. Respondent was served with the complaint but failed to answer, and relator moved for default on five of the seven counts of the complaint. See Gov.Bar R. V(6)(F).

{¶ 2} The Board of Commissioners on Grievances and Discipline appointed a master commissioner to consider the motion for default. The master commissioner granted the motion and made findings of fact, conclusions of law, and a recommendation. The master commissioner initially noted that since September 1, 1997, respondent has not registered as an attorney as required by Gov.Bar R. VI(1). Moreover, because respondent did not participate in the disciplinary process, the master commissioner found respondent in violation of Gov.Bar R. V(4)(G), as charged in the third and fifth counts to the complaint.

### Count I

{¶ 3} Respondent represented a client in December 1999 before the Hamilton County Municipal Court as a public defender. The charges against the client were eventually dismissed, and in January 2000, the client paid respondent $250 to recover property confiscated during the client's arrest and to obtain a refund of his cash bond. Over the next 18 months, the client tried, usually without success, to learn about respondent's progress. When the client did reach respondent, respondent advised that he was working on the matter. The client eventually recovered the property and bond money through his own efforts.

{¶ 4} The master commissioner found that respondent had thereby violated DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresen-

tation), 6–101(A)(3) (prohibiting neglect of an entrusted legal matter), 7–101(A)(1) (requiring an attorney to seek client's lawful objectives through reasonable means), and 7–101(A)(2) (requiring an attorney to carry out a contract for professional employment).

## Count II and IV

{¶ 5} According to the master commissioner's report, respondent also violated seven Disciplinary Rules in connection with Counts II and IV of the complaint. We reject these findings because relator did not move for default on these counts or submit evidence to substantiate them. See Gov.Bar R. V(6)(F) (requiring sworn or certified prima facie evidence to support allegations in a motion for default); *Toledo Bar Assn. v. Dewey*, 98 Ohio St.3d 418, 2003-Ohio-1495, 786 N.E.2d 453, ¶ 2.

## Count III

{¶ 6} On August 2, 2001, respondent delivered a $250 check for a domestic relations filing fee to the Hamilton County Clerk of Courts. The check, which was drawn on an IOLTA account that contained only $102.12, was returned for insufficient funds. The administrator for the clerk of courts attempted to collect the $250, and respondent eventually wrote another check, this time from his personal account, to cover the amount. Respondent's personal account was closed on September 21, 2001, and several days later, his second $250 check was also returned for insufficient funds. On November 13, 2001, the administrator placed respondent on a cash-only payment plan for the purpose of the clerk's office. Again with a personal check, respondent finally repaid the $250 filing fee on June 6, 2002. According to the master commissioner's report, respondent also negotiated and converted an $81 check that the clerk of courts refunded to him for unused court costs. We reject this finding, and the board's reliance on it, because the finding is not substantiated by prima facie evidence. See Gov.Bar R. V(6)(F); *Dewey*, supra.

{¶ 7} The master commissioner found that respondent had thereby violated DR 1–102(A)(4).

## Count V

{¶ 8} In March 1999, another client retained respondent to represent her in a divorce, paying him $760. The client repeatedly attempted to contact respondent to learn the status of her case but had little success. On two occasions when this client did speak with respondent, he told her to appear in court for hearings. Both times the client went to the court, but she discovered that her case was not on the docket and that respondent was not there.

{¶ 9} The client dismissed respondent in January 2002 and hired a new lawyer. She learned that respondent had never filed her petition for divorce. Respondent has not refunded this client's money. Moreover, respondent's IOLTA account bank records did not reflect the deposit of this client's $760.

{¶ 10} The master commissioner found that respondent had thereby violated DR 1–102(A)(4), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 9–102(A) (prohibiting commingling of client and attorney's funds).

## Count VI

{¶ 11} In February 2000, respondent agreed to represent a married couple concerning the foreclosure on their home. The couple paid respondent a $5,000 retainer, against which he agreed to charge on an hourly rate. During respondent's representation, the couple paid him an additional $5,000 in numerous payments by cash and checks. Afterward, they made many unsuccessful attempts to contact respondent and asked for an accounting of his legal fees. Respondent has neither provided the accounting nor refunded any unearned fees. Moreover, records of respondent's IOLTA account do not reflect the deposit of this couple's $10,000.

{¶ 12} The master commissioner found that respondent had thereby violated DR 9–102(A) and 9–102(B)(3) (requiring an attorney to maintain complete records of and appropriately account for client's funds in attorney's possession).[1]

## Count VII

{¶ 13} Respondent's subpoenaed bank records revealed that he withdrew funds from his IOLTA account to pay for his personal and business expenses, including apartment and office rent, groceries, telephone service, office supplies, pharmacy purchases, and personal membership fees. These withdrawals were made before respondent earned these funds as fees and without proper accounting. The master commissioner found that respondent had thereby violated DR 9–102(A) and 9–102(B)(3).

{¶ 14} In recommending a sanction for this misconduct, the master commissioner found none of the mitigating or aggravating considerations listed in Section 10 of the Rules and Regulations Governing Procedures on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Relator proposed and the master commissioner recommended that respondent's law license be indefinitely suspended. The board adopted the master commissioner's findings of misconduct except as to Count IV. However, "based on the

---

1. This rule was miscited in the complaint.

amount of money taken from [the clients in Count VI]," the board recommended that respondent be permanently disbarred.

{¶ 15} We agree that respondent violated DR 1–102(A)(4), 6–101(A)(3), 7–101(A)(1) and (2), 9–102(A), and 9–102(B)(3), and Gov.Bar R. V(4)(G). We also agree that respondent's persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings warrant his disbarment.

{¶ 16} Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 470 N.E.2d 886. The presumptive disciplinary measure for such acts of misappropriation is disbarment. *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11. Moreover, when faced with misappropriation and other professional misconduct that respondent has committed, including misrepresentations of filings never made, we have imposed our strictest sanction. *Cuyahoga Cty. Bar Assn. v. Rockman* (2001), 94 Ohio St.3d 12, 759 N.E.2d 773.

{¶ 17} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., F.E. SWEENEY, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and LUNDBERG STRATTON, JJ., dissent because they would indefinitely suspend respondent.

---

Nancy J. Gill and Richard H. Johnson, for relator.