COLUMBUS BAR ASSOCIATION *v.* MOUSHEY.

[Cite as *Columbus Bar Assn. v. Moushey,*
104 Ohio St.3d 427, 2004-Ohio-6897.]

(No. 2004-1373—Submitted September 28, 2004—Decided December 22, 2004.)

---

**Per Curiam.**

{¶ 1} Respondent, Michael Lee Moushey of Symmes, Ohio, Attorney Registration No. 0033805, was admitted to the practice of law in Ohio in 1975. On

October 2, 2002, we indefinitely suspended respondent from practice for his repeated neglect of clients' cases, his pattern of deceit, and his failure to cooperate in the investigation of his misconduct. *Columbus Bar Assn. v. Moushey,* 96 Ohio St.3d 461, 2002-Ohio-4850, 776 N.E.2d 16.

{¶ 2} On May 28, 2003, relator, Columbus Bar Association, filed an amended complaint charging respondent with additional violations of the Code of Professional Responsibility. Respondent was served with the complaint but did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

## Misconduct

### Count One

{¶ 3} In January and February 2001, a client gave respondent two checks to pay taxes based on a calendar-year 2000 estimate, one check made payable to respondent for $10,000 and another check made payable to his client trust account for $15,000. Respondent endorsed and deposited both checks but never paid the taxes. He later may have also provided false documentation to the client to hide the conversion. In June 2002, the client was granted a default judgment against respondent for $50,000 in compensatory and punitive damages.

{¶ 4} The board found that respondent had thereby violated DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on an attorney's fitness to practice law), 6–101(A)(1) (requiring an attorney to accept only cases the attorney is competent to handle), 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter), 7–101(A)(1) (requiring an attorney to seek the lawful objectives of a client through reasonable means), 7–101(A)(2) (requiring an attorney to carry out a contract of employment), 7–101(A)(3) (barring an attorney from damaging a client in the course of representation), 7–102(A)(5) (prohibiting an attorney from making a false statement of fact), 9–102(B)(2) (requiring an attorney to put client's funds in a place of safekeeping), 9–102(B)(3) (requiring an attorney to maintain complete records of all funds of a client and render appropriate accounts), and 9–102(B)(4) (requiring an attorney to promptly pay client funds to which he or she is entitled).

### Count Two

{¶ 5} A second client's 1996 federal income tax returns were selected for an audit, and he initially paid another attorney $835 to represent him. When that

attorney withdrew, the attorney promised the client that he would forward to respondent the client's file and $650 in unearned fees. Respondent withdrew one week later, citing a conflict of interest. The client repeatedly demanded that respondent return his money; however, respondent did no work in the case and kept the $650.

{¶ 6} The board found that respondent had thereby violated DR 1–102(A)(6), 2–110(A)(3) (requiring an attorney on withdrawal from employment to promptly repay unearned fees), 6–101(A)(1), and 9–102(B)(4).

### Count Three

{¶ 7} A third client's 1996 federal income tax return was also selected for an audit, the client also initially retained another attorney for $835 to represent him, and that attorney also withdrew. The attorney forwarded the client's file and $500 in unearned fees to respondent; however, the client decided to find his own successor counsel and notified respondent that he did not wish to retain him. The client requested that respondent return the $500 retainer, but respondent did not return the money even though he did no work on the case.

{¶ 8} The board found that respondent had thereby violated DR 1–102(A)(6), 2–110(A)(3), and 9–102(B)(4).

### Count Four

{¶ 9} To investigate the grievances filed against respondent, relator repeatedly mailed certified and other letters of inquiry to his office and residence addresses. Notwithstanding this effort, respondent did not respond to any of the allegations against him. The board found that respondent had thereby violated DR 1–102(A)(5) and 1–102(A)(6) and Gov.Bar R. V(4)(G) (requiring an attorney to cooperate in a disciplinary investigation).

### Count Five

{¶ 10} After our October 2, 2002 order indefinitely suspending respondent's license, a fourth client engaged him in November of that year to represent a company in a collection matter. In the course of this representation, respondent held himself out as a licensed attorney, negotiated a payment arrangement to avoid a judgment debtor's examination, authorized the placement of his name on a court entry as attorney for the judgment debtor, and purported to transfer client funds through his IOLTA account.

{¶ 11} The board found that respondent had thereby violated DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6). Moreover, because respondent had practiced law in violation of our indefinite-suspension order, the board found that respondent had violated Gov.Bar R. V(8)(E). The board also found, based on the master commissioner's report, another violation for failure to cooperate under Gov.Bar R.

V(4)(G) and a violation for practicing law under suspension, although neither specified facts to substantiate this misconduct and for the latter violation, both cited Gov.Bar R. VI(2), which governs applying for inactive status.

### Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") As aggravating factors, the board found that respondent had prior disciplinary offenses and dishonest or selfish motives, he had committed a pattern of misconduct and multiple offenses, he had not cooperated and refused to recognize his wrongdoing, and he had harmed vulnerable victims and failed to make restitution. BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (d), (e), (g), (h), and (i).

{¶ 13} Relator recommended that respondent be permanently disbarred. The master commissioner urged the board to disbar because of the "multiple offenses resulting in actual prejudice to the clients and the administration of justice," the "failure to cooperate with the Disciplinary investigation," and the "failure to comply with the previous sanctions." The board also recommended permanent disbarment.

{¶ 14} On review, we agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–110(A)(3), 6–101(A)(1), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 7–102(A)(5), 9–102(B)(2), 9–102(B)(3), and 9–102(B)(4), and Gov.Bar R. V(4)(G) and V(8)(E). We also agree that permanent disbarment is appropriate.

{¶ 15} As we said in *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004–Ohio–2683, 809 N.E.2d 1113, ¶ 16:

{¶ 16} "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 470 N.E.2d 886. The presumptive disciplinary measure for such acts of misappropriation is disbarment. *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002–Ohio–5945, 778 N.E.2d 573, ¶ 11."

{¶ 17} Moreover, in *Lorain Cty. Bar Assn. v. Fernandez*, 99 Ohio St.3d 426, 2003–Ohio–4078, 793 N.E.2d 434, we disbarred an attorney who had misappropriated funds while her license was under indefinite suspension and also failed to cooperate in the ensuing disciplinary investigation. Respondent has exacerbated his situation with these transgressions and others. Since his indefinite suspension, we have cited respondent twice for contempt—once because he did not timely surrender his certificate of admission and affidavit of compliance, *Columbus Bar Assn. v. Moushey*, 98 Ohio St.3d 1469, 2003–Ohio–916, 784 N.E.2d 704,

and later for his continuing to practice law while his license was under suspension. *Columbus Bar Assn. v. Moushey,* 99 Ohio St.3d 1533, 2003–Ohio–4647, 795 N.E.2d 55.

{¶ 18} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Bruce A. Campbell, Bar Counsel, Jill M. Snitcher McQuain, Assistant Bar Counsel, Joseph R. Cook, and Joel H. Mirman, for relator.