DISCIPLINARY COUNSEL v. LORD.

[Cite as *Disciplinary Counsel v. Lord,* 114 Ohio St.3d 466, 2007-Ohio-4260.]

(No. 2007–0346—Submitted April 17, 2007—Decided August 29, 2007.)

---

**Per Curiam.**

{¶ 1} This court admitted respondent, John A. Lord of North Royalton, Ohio, Attorney Registration No. 0072696, to the practice of law in Ohio in 2000. After failing to register as an attorney for the 2005–2007 biennium, he was suspended

from December 2, 2005, until January 18, 2006. See *In re Lord,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671. We indefinitely suspended respondent's license to practice on November 1, 2006, because he failed to file documents and appear in court for eight clients in six different cases, he did not truthfully account to his clients for his actions, and he failed to cooperate in the investigation of this misconduct. See *Disciplinary Counsel v. Lord,* 111 Ohio St.3d 131, 2006-Ohio-5341, 855 N.E.2d 457.

{¶ 2} The Board of Commissioners on Grievances and Discipline has recommended that we now permanently disbar respondent, based on findings that he mishandled six more cases of eight additional clients and again failed to cooperate in the investigation of his misconduct. On review, we find that respondent committed professional misconduct as determined by the board and hold that disbarment is appropriate.

{¶ 3} Relator, Disciplinary Counsel, charged respondent with violations of the Code of Professional Responsibility and Gov.Bar R. V(4)(G) (requiring lawyers to cooperate in a disciplinary investigation) in a seven-count amended complaint. The board served respondent with the amended complaint by certified mail, but he did not answer, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion, making findings of fact and conclusions of law and recommending disbarment. The board adopted the findings of misconduct and the recommendation.

## Misconduct

### Count I—The Freas Case

{¶ 4} In March 2004, George and Sondra Freas retained respondent to assist them with a threatened foreclosure and in a declaration of bankruptcy. Respondent entered an appearance on the Freases' behalf in the foreclosure proceeding but failed to file a timely answer even after obtaining leave to plead. He then moved for leave to plead instanter, the plaintiff objected, and the court scheduled a hearing. Respondent obtained a continuance of the hearing date by advising the court that he had another hearing at the same time. In reality, respondent had already moved for a continuance in the so-called conflicting case.

{¶ 5} Eventually, respondent was able to file an answer for the Freases through an agreed entry. He then failed to oppose the plaintiff's motion for summary judgment. The plaintiff prevailed and proceeded to hold a sheriff's sale to auction the Freases' property. Respondent received notice of the sheriff's sale but did not tell his clients about it.

{¶ 6} In August 2004, the Freases paid respondent $1,394 to pursue a Chapter 13 bankruptcy. Respondent never initiated the bankruptcy proceeding or completed any work for it. Despite having done nothing, respondent routinely

assured Mrs. Freas that he was taking care of everything. Mrs. Freas has since obtained a default judgment against respondent for $1,394.

{¶ 7} Because respondent abandoned the Freases' case, lied to his clients, misled a court, and kept unearned fees, the board found, and we agree, that he violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and 2–106(A) (prohibiting a lawyer from charging or collecting a clearly excessive fee).

### Count II—The Pagonis Case

{¶ 8} Sandy Pagonis paid respondent $250 in April 2005 to assist her and her son in appealing an adverse decision by the Summit County Juvenile Court. Respondent promised to first move for reconsideration and then file the appeal. Several months later, Pagonis inquired about the motion for reconsideration only to learn from the juvenile court that no such motion had been filed.

{¶ 9} The juvenile court nevertheless scheduled a hearing in the Pagonis case. Respondent advised his clients that he had a schedule conflict and would be unable to appear on the hearing date; however, he never moved for a continuance. Respondent did not appear at the hearing, and Pagonis and her son had to proceed unrepresented. The magistrate issued a ruling adverse to the clients.

{¶ 10} Pagonis discharged respondent in October 2005 and asked him to return her case file. Respondent did not return the file for approximately five months. Respondent's delay forced Pagonis to appear at several hearings without the benefit of her file.

{¶ 11} Because respondent lied to Pagonis, failed to provide promised representation, and did not timely return the Pagonis case file, the board found, and we agree, that he violated DR 1–102(A)(4), 1–102(A)(5), 2–110(A)(2) (prohibiting a lawyer from withdrawing from employment without having taken reasonable steps to avoid foreseeable prejudice to client), 7–101(A)(1) (requiring a lawyer to seek the lawful objectives of a client through reasonably available means), 7–101(A)(2) (prohibiting a lawyer from failing to carry out a contract of professional employment), and 7–101(A)(3) (prohibiting a lawyer from causing his client damage or prejudice during representation).

### Count III—The Knowlton Case

{¶ 12} In May 2004, William and Barbara Knowlton paid respondent $334 to represent them in a pending bankruptcy case. The case had been filed under Chapter 13, but in June 2004, the court dismissed the action for a failure to

comply with the terms of the reorganization plan. Respondent moved to reinstate the case so as to convert the action to a Chapter 7 bankruptcy. The court found respondent's filings inadequate and did not go forward with the conversion.

{¶ 13} When asked to explain, respondent told the Knowltons that "the court was wrong." He never communicated with the Knowltons again.

{¶ 14} Because respondent mishandled the Knowltons' bankruptcy and ignored them, the board found, and we agree, that respondent violated DR 1–102(A)(4), 1–102(A)(5), 6–101(A)(3), 7–101(A)(1), and 7–101(A)(2).

### Count IV—The Roberts Case

{¶ 15} Debra Roberts hired respondent in October 2005 to appeal a court of appeals decision that affirmed a court order terminating her parental rights. She paid respondent $1,000 toward his fee and $300 to obtain legal records. On December 9, 2005, Roberts forwarded him a check for an additional $100.

{¶ 16} Roberts learned in December 2005 that respondent had not filed the appeal and that her children were in the process of being adopted. She tried repeatedly to contact respondent without success.

{¶ 17} But on December 2, 2005, we suspended respondent from the practice of law for failing to register as an attorney for the 2005–2007 biennium. Respondent deposited Roberts's $100 check after he had been suspended and never informed his client of the suspension. Roberts has asked respondent repeatedly to return her file, including the records she had paid him $300 to obtain. Respondent has ignored his client's request.

{¶ 18} Because respondent failed to file Roberts's appeal and then abandoned her case without refunding unearned fees, the board found, and we agree, that respondent violated 1–102(A)(5), 2–106(A), 2–110(A)(2), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

### Count V—The Orlando Case

{¶ 19} Respondent remained on attorney-registration suspension until January 18, 2006. Shortly before his reinstatement, respondent entered an appearance on behalf of Robert Orlando Jr. and submitted various motions in the Ashtabula County Common Pleas Court. The court later struck the pleadings from the record.

{¶ 20} Because respondent practiced law while under suspension, the board found, and we agree, that he violated DR 1–102(A)(5), 1–102(A)(6), 3–101(B) (practicing law in violation of the regulations of the jurisdiction), and 7–101(A)(3).

## Count VI—Failure to Cooperate

{¶ 21} Relator's investigator sent letters of inquiry by both certified and regular mail to respondent in each of the five preceding grievances, for a total of 17 in all. The investigator had four of the letters hand-delivered. On January 18, 2006, respondent acknowledged in writing that he had received letters of inquiry in the Freas, Pagonis, Knowlton, and Roberts cases.

{¶ 22} In February 2006, relator's investigator subpoenaed respondent to appear and produce all documents pertinent to the Freas, Pagonis, Knowlton, and Roberts grievances. On the appearance date, relator's investigator called respondent and learned that he did not intend to appear in response to the subpoena because he had a scheduling conflict. Respondent also related that he had known of the conflict for over a month.

{¶ 23} Respondent afterward agreed to and did respond, via e-mail, to the Freas, Pagonis, Knowlton, and Roberts grievances. In mid-March 2006, the investigator asked respondent for additional information in each of those cases, sending requests by e-mail and regular mail. Respondent replied via e-mail with some information on the Freas and Pagonis grievances, promising to supply those clients' files and to account for his fees. Respondent did not reply again at all relative to Knowlton and Roberts and gave no information about the Orlando grievance.

{¶ 24} The board found, and we agree, that respondent violated Gov.Bar R. V(4)(G).

## Count VII—The Dial Grievance

{¶ 25} Patrick Dial hired respondent in February 2005 to assist him in challenging his conviction through a motion for reconsideration in the court of appeals, an appeal to this court, and a petition for federal habeas corpus. Dial paid respondent $60 to obtain a copy of the trial transcript.

{¶ 26} Respondent first told Dial in January 2006 that he had filed an amended motion for a new trial in his case. Then, in March 2006, he told Dial that he had filed a "whole new motion for a new trial" because he believed that the one filed by Dial's prior counsel was "crap." Dial, however, had by that time obtained a copy of the docket in his case and knew that respondent had not filed anything in court for him. Dial discharged respondent later that March and asked for a return of his case file. Respondent did not reply.

{¶ 27} During relator's investigation of the Dial grievance, respondent again promised to reply to letters of inquiry, but he did not.

{¶ 28} Because respondent abandoned Dial's case, lied about having completed legal work, and did not return Dial's file, the board found, and we agree, that he

violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(4) (requiring a lawyer to promptly return property to which the client is entitled). We also agree with the board that because respondent did not respond to letters of inquiry, he also violated Gov.Bar R. V(4)(G).

## Sanction

{¶ 29} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993.

{¶ 30} Respondent repeatedly kept unearned fees and failed to return his clients' case files in violation of his duty to preserve clients' property and protect their other interests. He also deceived his clients and abandoned their cases. Respondent practiced law while his license was under suspension and did not properly participate in the disciplinary investigation. For these breaches of his duty to clients, the public, and the legal profession, coupled with the aggravating effect of his disciplinary record, BCGD Proc.Reg. 10(B)(1)(a), disbarment is appropriate. See *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16 (accepting legal fees and then failing to carry out contracts for employment is tantamount to theft of client funds and cause for disbarment when coupled with neglect, a history of misconduct, and other disciplinary infractions); *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (attorney's persistent failure to perform, failure to account for clients' money, neglect of their interests, and failure to participate in disciplinary hearings compels disbarment); and *Medina Cty. Bar Assn. v. Wootton,* 110 Ohio St.3d 179, 2006-Ohio-4094, 852 N.E.2d 175, ¶ 10 (attorney disbarred for repeated theft of client funds, dishonesty, great financial harm to clients, and failure to cooperate).

{¶ 31} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.