DISCIPLINARY COUNSEL v. ZIGAN.

[Cite as *Disciplinary Counsel v. Zigan,* 118 Ohio St.3d 180, 2008-Ohio-1976.]

(No. 2007–1973—Submitted January 9, 2008—Decided May 1, 2008.)

---

**Per Curiam.**

{¶ 1} Respondent, Steven Earl Zigan of Lancaster, Ohio, Attorney Registration No. 0071793, was admitted to the practice of law in Ohio in 1999. From December 2, 2005, to February 13, 2006, respondent's license to practice law was suspended due to his failure to comply with the attorney registration requirements of Gov.Bar R. VI.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now permanently disbar respondent, based on findings that he converted a substantial amount of funds from his employer and clients, prepared false documents to conceal his theft from his employer, commingled his clients' funds with his personal funds, took retainers without performing legal services, and

failed to cooperate in the investigation of the complaint against him. On review, we agree with the board that respondent violated the Code of Professional Responsibility, and we order that respondent be disbarred. Respondent has not objected to the findings and recommendation of the Board of Commissioners on Grievances and Discipline.

## Misconduct

### Count I

{¶ 3} In July 2005, respondent accepted $750 from Steven Dearwester for attorney fees and filing fees to represent him in an uncontested divorce. Respondent told Dearwester that he would file the case in court within two weeks and that it would be finalized about 45 days later. Respondent failed to file any legal pleadings on behalf of Dearwester and did not return the fees paid by the client. The law firm that employed respondent, Linehan and Associates, had no record that Dearwester had paid it any attorney fees. Dearwester ended up filing his own petition for dissolution.

{¶ 4} As to Count I, the board found violations of DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law), 6–101(A)(3) (neglecting an entrusted legal matter), 7–101(A)(1) (failing to seek the lawful objectives of a client), 7–101(A)(2) (requiring a lawyer to carry out a contract of employment), 9–102(A) (prohibiting a lawyer from depositing personal funds in law firm accounts), and 9–102(B)(4) (failing to promptly deliver client's property in lawyer's possession).

### Count II

{¶ 5} In January 2005, respondent accepted a $1,000 retainer from Dell Lucas to represent her in an eviction matter. Respondent supplied Lucas with a receipt but did not use the firm's official receipt book. Linehan and Associates has no record that the Lucas retainer was ever paid to the firm. Lucas's file with the firm did contain a contingent-fee agreement, but Lucas denied ever signing this agreement. The law firm typically reserved contingent-fee agreements for personal-injury matters, but Lucas's case involved a landlord-tenant dispute. During respondent's deposition, taken by relator in September 2006, respondent agreed to supply the Lancaster police with a handwriting sample for comparison to his signature on the contingent-fee agreement. Respondent failed to provide the sample. Expert analysis did substantiate that Lucas's signature on the fee agreement was forged.

{¶ 6} Respondent filed an answer and counterclaim on behalf of Lucas even though he was instructed by his employer not to take the case or represent Lucas because of a conflict of interest with the law firm. Respondent then failed to appear at a pretrial conference that had been scheduled in the Lucas matter. The court contacted the law firm, which informed the court that respondent had been fired and that he had been instructed not to take the case because of the conflict.

{¶ 7} As to Count II, the board found violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 9–102(A), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation).

## Count III

{¶ 8} In February 2005, Ralph Smyers paid respondent a $1,500 retainer to represent him in a breach-of-contract matter against a homebuilder. Respondent took the funds and provided Smyers with an unofficial receipt rather than using the firm's official receipt book. The firm had no record that a retainer had been paid. A contingent-fee agreement was placed in the law firm's files, but Smyers denied signing the agreement.

{¶ 9} Respondent's employment with the law firm was terminated on September 11, 2005, when James Linehan confronted respondent about the $1,500 he had received from Smyers. Respondent admitted that he had kept the money for his own use. Respondent also failed to provide a handwriting sample for comparison to his signature on the contingent-fee agreement.

{¶ 10} As to Count III, the board found violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 9–102(A), and Gov.Bar R. V(4)(G).

## Count IV

{¶ 11} In August 2005, respondent accepted a computer and electronic equipment as payment on an account for the representation of Rodney Stepleton. Respondent's employer refused to accept the items as payment for the fees that were owed and ordered respondent to return the items to Stepleton. Respondent acknowledged that he understood that Stepleton had tendered the equipment to pay his bill to the firm and that the firm would not accept the goods. At his hearing, respondent admitted that he had kept the equipment, valued at $3,500, for himself. He also admitted that he had accepted the items in the name of the firm.

{¶ 12} On April 3, 2006, after respondent's termination from the law firm, he accepted a check from Stepleton for $2,500 for additional legal fees. When relator requested an accounting of the fees, respondent indicated that all but one-half hour of the work was performed while he was still an employee of the law

firm. Respondent failed to return to the firm any portion of the fees that were earned while he was still employed there.

{¶ 13} As to Count IV, the board found violations of DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6), and Gov.Bar R. V(4)(G).

## Count V

{¶ 14} Respondent was retained by Anthony Roby in a personal-injury matter. In April 2005, respondent failed to deposit the funds from settling Roby's claim into the Interest on Lawyers' Trust Accounts ("IOLTA") account of the law firm as he was required to do by the terms of his employment. The law firm's file did not even reflect that the case had been settled. Respondent cashed the settlement check. Respondent paid Roby a portion of the settlement but failed to pay any of the remaining funds to the law firm and failed to fill out any settlement statement for the file. The firm became aware of the situation when Roby complained that his medical bills from the injury were still unpaid.

{¶ 15} As to Count V, the board found violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 9–102(A).

## Count VI

{¶ 16} At his hearing, respondent stipulated to all of the facts included in Count VI of the complaint other than those dealing with one check for $750. Between January 13, 2005, and August 31, 2005, respondent, while still employed by the law firm, failed to turn over to the firm five checks, totaling $5,000, for attorney fees that belonged to the firm. Instead, respondent deposited the checks into his personal account and converted all the funds to his own use. Respondent also admitted at the hearing that he had endorsed the $750 check, although he had not stipulated to improperly depositing it in his personal account. The law firm did not receive any of the fees.

{¶ 17} As to Count VI, the board found violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 9–102(A).

## Count VII

{¶ 18} In September 2005, after respondent was no longer employed by the law firm, he accepted $630 from Sherry Rose Smith to represent her son in bringing a civil lawsuit. In November, respondent admitted to Smith that he had been dragging his feet on the case and had not performed any work on the matter. Respondent told Smith in February 2006 that he would return the money he had accepted for the case, but he failed to refund any fees.

{¶ 19} As to Count VII, the board found violations of DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 9–102(B)(4).

### Respondent's Defense

{¶ 20} During the hearing before the panel, respondent asserted that he had deposited fees earned on behalf of his former firm with the firm and that he did not forge any client contracts. He also asserted that the lack of any record of his fees in the firm's files could be explained by the actions of another employee, who was eventually fired for theft.

### Review

{¶ 21} The panel and the board did not find respondent's testimony credible, and neither do we. Respondent testified that he did not recall personally giving to the firm's bookkeeper any checks, money, or documents throughout his two years with the firm. He admitted to commingling his clients' funds with his own, testifying that he would deposit checks he received in his personal account because they were made out to him and that he then would give the funds to the law firm. When questioned by the panel, however, respondent was unable to explain why his bank statements showed that several checks had been deposited but corresponding withdrawals had not been made to provide the funds to the firm. Respondent then changed his testimony, claiming that he had kept the checks for the fees that were owed to him by the firm. Respondent also admitted having financial problems during the period involved in this proceeding. Respondent's former employer testified that contingent-fee agreements would not be appropriate in many of the cases accepted by respondent. Respondent also agreed that the clients' signatures had been forged. We find, as did the board, that respondent had placed the forged contingent-fee agreements in the firm's files to cover up his theft, based on respondent's presentation of bogus receipts and the existence of contingent-fee agreements in cases that should not have been taken on a contingency basis.

{¶ 22} In light of the evidence and respondent's lack of credibility, we adopt all of the board's findings of misconduct. Specifically, we find that respondent violated DR 1–102(A)(4) with respect to Counts I, II, III, IV, V, VI, and VII; DR 1–102(A)(5) with respect to Counts I, II, III, IV, V, VI, and VII; DR 1–102(A)(6) with respect to Counts I, II, III, IV, V, VI, and VII; DR 6–101(A)(3) with respect to Counts I and VII; DR 7–101(A)(1) with respect to Counts I and VII; DR 7–101(A)(2) with respect to Counts I and VII; DR 9–102(A) with respect to Counts I, II, III, V, and VI; and DR 9–102(B)(4) with respect to Counts I and VII; and Gov.Bar R. V(4)(G) with respect to Counts II, III, and IV.

### Sanction

{¶ 23} In determining the appropriate sanction to impose for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances,

and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake,* 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We weigh the aggravating and mitigating factors and decide whether extenuating circumstances justify lenience in our disposition. See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). We are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 24} Respondent converted funds from his employer to his own personal use, repeatedly failed to perform work for clients, and failed to cooperate with the disciplinary process by failing to provide a handwriting sample for analysis by a handwriting examiner. He also deceived his clients and abandoned their cases. Respondent has also had his license to practice law previously suspended for failure to comply with the attorney registration requirements of Gov.Bar R. VI.

{¶ 25} We agree that permanent disbarment is the appropriate sanction. Attorneys must comply with the ethical requirements imposed previously by the Code of Professional Responsibility and now by the Rules of Professional Conduct. Respondent has repeatedly demonstrated his unwillingness or inability to do so. For these breaches of duty to his clients, the public, and the legal profession, coupled with the aggravating effect of his disciplinary record, BCGD Proc.Reg. 10(B)(1)(a), disbarment is appropriate. See *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16 (accepting legal fees and then failing to carry out contracts for employment is tantamount to theft of client funds and cause for disbarment); *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113 ¶ 15 (attorney's persistent failure to perform as promised, failure to account for his clients' money, neglect of their interests, and failure to participate in disciplinary hearings compels disbarment); *Medina Cty. Bar Assn. v. Wootton,* 110 Ohio St.3d 179, 2006-Ohio-4094, 852 N.E.2d 175, ¶ 10 (attorney disbarred for repeated theft of client funds, dishonesty, great financial harm to clients, and failure to cooperate).

{¶ 26} Respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.