CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* FREEMAN.

[Cite as *Cleveland Metro. Bar Assn. v. Freeman,* 135 Ohio St.3d 263,

2013-Ohio-736.]

*Attorney misconduct, including failing to act with reasonable diligence in representing a client, failing to keep client reasonably informed, failing to promptly refund unearned fees and protect a client's interests upon withdrawal from representation, and failing to cooperate with a disciplinary investigation.*

(No. 2012-1693—Submitted January 23, 2013—Decided March 6, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 12-029.

_____

**Per Curiam.**

{¶ 1} Respondent, Kenneth Jeff Freeman of Cleveland, Ohio, Attorney Registration No. 0018940, was admitted to the practice of law in Ohio in 1981. We publicly reprimanded Freeman in April 2002 for neglecting a client's bankruptcy, handling an adversarial proceeding in another client's bankruptcy without adequate preparation, and initially failing to cooperate in the resulting disciplinary investigation. *Cleveland Bar Assn. v. Freeman*, 95 Ohio St.3d 117, 2002-Ohio-1944, 766 N.E.2d 152. And in March 2011, we imposed a one-year suspension, fully stayed on conditions, for Freeman's neglect of two client matters and his failure to effectively communicate with the clients in those matters. *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 416, 2011-Ohio-1447, 945 N.E.2d 515.

{¶ 2} This matter is now before us on a three-count complaint filed by relator, Cleveland Metropolitan Bar Association, alleging that Freeman overdrew his client trust account, failed to reasonably communicate with two clients,

neglected one client matter, failed to protect a client's interests upon the termination of his representation, failed to promptly refund the unearned portion of his fee upon withdrawal from employment, committed an illegal act that adversely reflects on his honesty or trustworthiness, and failed to cooperate in the resulting disciplinary investigations.

{¶ 3} Although the complaint was served at the address Freeman has on file with the Attorney Registration Office, he failed to file an answer or otherwise respond. On September 7, 2012, relator moved for default judgment. A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the default motion and, based upon the evidence submitted by relator, found that Freeman had committed the charged misconduct. Citing Freeman's repeated breach of his duties to clients, the public, and the legal profession, combined with the aggravating effect of his prior disciplinary record, the master commissioner agreed with relator's recommendation that Freeman be permanently disbarred. The board adopted the master commissioner's findings of fact and misconduct as well as its recommendation that he be permanently disbarred from the practice of law in Ohio. For the reasons that follow, we find that permanent disbarment is the appropriate sanction for Freeman's misconduct.

**Misconduct**

**Count One: The Lewis Matters**

{¶ 4} Joel K. Lewis retained Freeman to file a Chapter 7 bankruptcy in January 2010 and paid attorney and filing fees totaling $2,177. But Freeman never filed the bankruptcy petition and failed to respond to Lewis's inquiries about the case. Lewis paid Freeman an additional $825 to represent him in a foreclosure action filed against him by Chase Bank, U.S.A. Freeman learned in early August 2010 that Chase had filed a complaint against Lewis, but he waited until August 17, 2010, to obtain a copy of it from the court, at which time he discovered that Chase had moved for default judgment. Freeman obtained leave

to answer the complaint, and in October 2010, he entered into a consent judgment with Chase that stayed execution of the judgment against Lewis for 60 days. In January 2011, Lewis forwarded a notice to Freeman indicating that Chase had initiated collection proceedings against him. Freeman did not respond to that correspondence or to Lewis's subsequent notice of termination and request for a refund. Lewis retained another law firm to address the garnishment of his wages.

{¶ 5} Freeman did not respond to relator's letter of inquiry regarding the Lewis grievance, despite the fact that relator twice granted him extensions of time to respond. In response to a July 20, 2011 letter from relator, Freeman did confirm that he had met with Lewis in January 2010 and that he had never filed a bankruptcy petition on Lewis's behalf. He also confirmed that he had learned of the Chase lawsuit on August 6, 2010, but that he had waited until August 17, 2010, to obtain a copy of the complaint from the court. He did not respond to further communications from relator. Nor did he file an answer or otherwise appear in this disciplinary proceeding.

{¶ 6} The board found that Freeman's conduct in the Lewis matters violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.1(b) and Gov.Bar R. V(4)(G) (both requiring a lawyer to cooperate with a disciplinary investigation).

### Count Two: The Wilder Matter

{¶ 7} In May 2010, Jamere Wilder retained Freeman to file an emergency Chapter 13 bankruptcy. Freeman filed two bankruptcy petitions on

Wilder's behalf, but the bankruptcy court dismissed them because of Wilder's failure to make payments according to the plan. Wilder retained Freeman to file a third bankruptcy in January 2011. She gave Freeman more than $16,000, representing six months of the payments required by her previous Chapter 13 plan. Instead of filing a Chapter 13 bankruptcy, Freeman filed a Chapter 7 bankruptcy, and he deducted his $1,200 fee and $426 in filing fees from the funds he had received from Wilder. Although Freeman had agreed to seek a mortgage loan modification on Wilder's behalf, he failed to do so. He also consistently failed to return Wilder's telephone calls. Consequently, in August 2011, Wilder terminated his representation and asked him to return the balance of her money. When Freeman did not return the money, Wilder filed a report with the Cleveland police department and applied for reimbursement from the Clients' Security Fund.

{¶ 8} Relator notified Freeman of Wilder's grievance in two letters mailed in September 2011. Relator also attempted to follow up with him by telephone and fax, but received no response.

{¶ 9} The board found that Freeman's conduct in the Wilder matter violated Prof.Cond.R. 1.4(a)(2), 1.4(a)(3), 1.4(a)(4), 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest), 8.1(b), and 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and Gov.Bar R. V(4)(G).

### Count Three: Overdraft of Client Trust Account

{¶ 10} On July 28, 2011, disciplinary counsel received a notice from Freeman's bank, advising that he had overdrawn his client trust account. Disciplinary counsel referred the matter to relator for further investigation. Although Freeman received relator's letter of inquiry and requested an extension of time to respond to it, he failed to submit a response. He also did not return relator's telephone calls.

4

**{¶ 11}** The board found that Freeman's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds of clients in an interest-bearing trust account, separate from the lawyer's own funds), 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and 8.1(b) and Gov.Bar R. V(4)(G).

**{¶ 12}** We adopt the board's findings of fact and misconduct with respect to each of the three counts summarized above.

### Sanction

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 14}** The board found, and we agree, that seven of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) are present. Specifically, Freeman has committed prior disciplinary offenses, has engaged in a pattern of misconduct involving multiple offenses, has failed to cooperate in the disciplinary process, has refused to acknowledge the wrongful nature of his conduct, has caused harm to vulnerable clients, and has failed to make restitution. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), (g), (h), and (i). And there is no evidence that any of the mitigating factors of BCGD Proc.Reg. 10(B)(2) are present.

**{¶ 15}** In light of Freeman's persistent breach of his duties to his clients, the public, and the legal profession by accepting legal fees and failing to complete the promised legal work, failing to reasonably communicate with his clients, and failing to cooperate in the ensuing disciplinary investigations, and because Freeman has been disciplined in the past for similar misconduct, the master

commissioner and board recommend disbarment. Indeed, the presumptive sanction for accepting retainers and then failing to carry out the contract of employment is disbarment because such conduct is tantamount to theft. *See, e.g., Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. In the absence of any mitigating factors to warrant the imposition of a lesser sanction, we agree that permanent disbarment is the appropriate sanction here.

{¶ **16**} Accordingly, Kenneth Jeff Freeman is permanently disbarred from the practice of law in Ohio. Costs are taxed to Freeman.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Squire Sanders, L.L.P., Colin Jennings, and Kathleen M. Portman, for relator.

_____