DISCIPLINARY COUNSEL *v*. ROSS.

[Cite as *Disciplinary Counsel v. Ross,*
107 Ohio St.3d 191, 2005-Ohio-6179.]

(No. 2005–0751—Submitted June 28, 2005—Decided December 7, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Michael Anthony Ross of Lorain, Ohio, Attorney Registration No. 0061243, was admitted to the Ohio bar in 1993. In 2002, we publicly reprimanded respondent for violating Gov.Bar R..V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation). *Lorain Cty. Bar Assn. v. Ross,* 97 Ohio St.3d 224, 2002-Ohio-5803, 778 N.E.2d 39. On December 5, 2003, we suspended his license to practice law because he failed to comply with continuing-legal-education requirements. *In re Report of Comm. on Continuing Legal Edn.,* 100 Ohio St.3d 1516, 2003-Ohio-6494, 800 N.E.2d 34. On May 10, 2004, we imposed an additional interim suspension of respondent's license to practice law under Gov.Bar R. V(5)(A)(4) after we received notice that respondent had defaulted on a child-support order. *In re Ross,* 102 Ohio St.3d 1442, 2004-Ohio-2285, 808 N.E.2d 394.

{¶ 2} On September 7, 2004, relator, Disciplinary Counsel, filed an amended complaint charging respondent with four counts of professional misconduct. Respondent was served with the complaint at his last known address but did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

## Misconduct

### Count I

{¶ 3} Eric Pryor was involved in an automobile accident in February 1995 and sustained serious injuries requiring hospitalization and extensive rehabilitation. While Pryor was still in the hospital a few days after the accident, respondent—who was married to Pryor's cousin—visited him and recommended that Pryor allow respondent to represent him. Pryor agreed and entered into a contingent-fee contract naming respondent as his lawyer in connection with any claims arising out of the accident.

{¶ 4} Pryor's medical treatment and physical therapy continued for more than 12 months, and respondent did not give him copies of documents filed in any court or exchanged with any insurance companies during that time. Respondent did give Pryor between $4,000 and $6,000, explaining that respondent would be reimbursed for the advances once Pryor received the final settlement of his insurance claim.

{¶ 5} In May 1996, respondent told Pryor that an insurance settlement had been reached, and Pryor believed that the amount of the settlement was $250,000. The following month, respondent accompanied Pryor to an automobile dealership, where Pryor selected a new car for purchase. Respondent wrote a check to cover the car's $15,000 cost.

{¶ 6} Pryor later discovered that his insurance company had issued two settlement checks totaling $290,000 to him and respondent jointly. Both checks were endorsed by respondent and purportedly by Pryor before they were deposited, but Pryor denies ever having seen or signed the checks. When Pryor tried to withdraw money from the bank account that respondent had opened for the settlement proceeds, he discovered just $25,000 in the account. Pryor and his medical providers received no more than $146,000 from the $290,000 settlement.

{¶ 7} Pryor filed a grievance with relator against respondent and also submitted a claim to the Clients' Security Fund. That fund awarded Pryor $50,000 in December 2004.

{¶ 8} The board found that respondent had violated DR 1–102(A)(3) (barring illegal conduct involving moral turpitude), 1–102(A)(4) (prohibiting conduct involv-

ing fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 2–103(A) (prohibiting a lawyer from recommending that a nonlawyer engage the lawyer's services when the nonlawyer has not sought legal advice regarding the employment of a lawyer), 2–104(A) (forbidding a lawyer who has given unsolicited advice to a nonlawyer about obtaining legal counsel or taking legal action to accept employment resulting from that advice), 2–106(A) (prohibiting an illegal or clearly excessive fee), 5–103(B) (barring a lawyer from providing financial assistance to a client aside from court costs and the expenses of litigation), 9–102(A) (requiring a lawyer to deposit client funds in a trust account), 9–102(B)(1) (requiring prompt notification that an attorney has received client's funds), 9–102(B)(3) (requiring a lawyer to maintain complete records and appropriate accounts), and 9–102(B)(4) (requiring prompt payment of the client's funds or other property in the lawyer's possession).

## Count II

{¶ 9} Benjamin Bellisario and his wife hired respondent in 1993 to negotiate the settlement of an outstanding debt. In November 1993, the Bellisarios gave a check to respondent for $2,500 with the understanding that he would forward it to the creditor in full satisfaction of the debt.

{¶ 10} In 2002, the Bellisarios sought to buy a new home and discovered that the debt had not been paid. Bellisario contacted respondent, who promised to check into the matter. Bellisario never heard anything further from respondent.

{¶ 11} An investigation of Bellisario's grievance by the Lorain County Bar Association determined that respondent had never paid the creditor. In June 2002, after relator's investigation had begun, respondent finally settled the debt and obtained an entry of satisfaction of judgment. Respondent never provided the Bellisarios with any settlement documents, releases, or an accounting of the money that he had received and disbursed.

{¶ 12} The board found that respondent had violated DR 1–102(A)(4), 1–102(A)(6), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(2) (requiring a lawyer to carry out a contract of employment), 7–101(A)(3) (barring conduct that prejudices or damages a client), and 9–102(B)(3).

## Count III

{¶ 13} Relator sent respondent multiple letters of inquiry and subpoenas during the investigation of the grievances filed by respondent's former clients.

Respondent did not reply and never filed an answer to relator's complaint or to the motion for default.

{¶ 14} The board found that respondent had violated Gov.Bar R. V(4)(G).

*Count IV*

{¶ 15} Jennie Betts passed away in November 2000. Her will designated Malcolm Huddleston, her son, as executor. An estate was opened in the Lorain County Probate Court in December 2002, and respondent was designated as the attorney for the executor.

{¶ 16} On December 30, 2002, the decedent's home was sold. After closing adjustments, the estate realized $18,054.72 from the sale. Malcolm Huddleston and his sister were to share one-half of the proceeds, and other beneficiaries under the decedent's will were to receive the balance.

{¶ 17} As executor, Huddleston endorsed the check from the sale of the home and delivered it to respondent. Respondent also endorsed the check and told Huddleston that he would deposit the check and distribute the proceeds. The check was cashed in January 2003, but none of the beneficiaries ever received any of the proceeds. Huddleston and his sister tried repeatedly to contact respondent but never succeeded.

{¶ 18} The board found that respondent had violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), 9–102(A), 9–102(B)(1), 9–102(B)(3), and 9–102(B)(4).

Sanction

{¶ 19} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had been the subject of prior discipline, had engaged in a pattern of misconduct, had not cooperated in the disciplinary process, and had harmed vulnerable victims. BCGD Proc.Reg. 10(B)(1)(a), (c), (e), and (h). The board found that no mitigating factors existed.

{¶ 20} Relator recommended that respondent be permanently disbarred for his misconduct. The master commissioner and the board accepted this recommendation.

{¶ 21} We agree that respondent violated all of the provisions cited in the board's report, and we also agree that permanent disbarment is the appropriate sanction. Respondent's prior disciplinary violations and his failure to cooperate in the investigation of these latest grievances indicate that he holds little respect for his obligations to the legal profession. And his neglect of client matters and

repeated misappropriation of client funds demonstrate that he is not fit to practice law.

{¶ 22} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.