TOLEDO BAR ASSOCIATION *v.* MASON.

[Cite as *Toledo Bar Assn. v. Mason,* 118
Ohio St.3d 412, 2008-Ohio-2704.]

(No. 2007–2322—Submitted February 6, 2008—Decided June 12, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Patrick S. Mason of Sandusky, Ohio, Attorney Registration No. 0076884, was admitted to the Ohio bar in 2003.

{¶ 2} Relator, Toledo Bar Association, filed a complaint charging respondent with several violations of the Code of Professional Responsibility. Respondent failed to answer the complaint, and pursuant to Gov.Bar R. V(6)(F), relator filed a motion for default judgment, which was referred to a master commissioner. The master commissioner made findings of fact and conclusions of law and a recommendation. The Board of Commissioners on Grievances and Discipline adopted the master commissioner's findings and recommendation.

{¶ 3} The board recommends that we indefinitely suspend respondent's license to practice law based on findings that he committed several disciplinary violations. We adopt the board's findings of misconduct. We reject, however, the board's recommended sanction and hold instead that respondent should be permanently disbarred.

### Misconduct

#### *Mitchell Grievance*

{¶ 4} In October 2004, Cheryl Mitchell hired respondent to represent her on a personal-injury claim. Mitchell was initially represented by Guy Barone, but Barone withdrew as counsel in September 2004. Mitchell agreed to pay respondent a one-third contingent fee on any settlement or verdict award. Respondent agreed to protect Barone's interest in the attorney fees and expenses arising from Barone's earlier representation of Mitchell.

{¶ 5} In April 2005, respondent notified Mitchell that her case had been settled for $13,750. Although she signed a settlement release and endorsed the settlement check that same month, Mitchell did not receive a check or an accounting until December 2005, when respondent gave her a check for $4,091.67 as her share of the settlement proceeds. Mitchell deposited the check, but the check was returned because it was written against a bank account that did not exist.

Mitchell incurred banking charges when the settlement check failed to clear. Moreover, despite her repeated demands, respondent has never paid Mitchell any proceeds from the settlement of her case.

{¶ 6} When Mitchell signed the settlement release in April, she informed respondent that she was being sued for unpaid medical bills. Respondent assured Mitchell that he would pay the medical bills with her settlement proceeds. Respondent sent a settlement statement to Mitchell reflecting that he had deducted $2,800 from the settlement proceeds to pay an outstanding medical bill. But respondent never paid any money to satisfy this bill, and Mitchell's wages were garnished until she was able to pay this bill using other means.

{¶ 7} Upon settling Mitchell's case, respondent took $4,583.33 as his attorney fee, which was one-third of Mitchell's $13,750 settlement. Respondent apparently agreed to pay Barone 45 percent of his one-third contingent fee. But instead of deducting Barone's share from his own contingent fee, respondent deducted Barone's $2,025 share from Mitchell's settlement. As a result, fees paid to respondent and Barone totaled $6,608.33, almost 50 percent of Mitchell's total settlement proceeds.

{¶ 8} Based on respondent's misconduct with regard to the Mitchell matter, the board found that respondent had violated DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), 2–107(A)(1) (prohibiting a lawyer from dividing fees with lawyers not in the same firm where the division is not in proportion to the services performed by each lawyer), 2–107(A)(2) (requiring the disclosure in writing of the terms of the division of fees), 2–107(A)(3) (prohibiting the sharing of unreasonable fees among lawyers not in the same firm), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment entered into with the client for professional services), 7–101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging his client during the course of the professional relationship), 9–102(B)(3) (requiring a lawyer to maintain complete records of all funds, securities, and other properties of a client coming into the lawyer's possession and failing to render appropriate accounts to the clients regarding those funds), and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver upon request funds to which the client is entitled).

### Young Grievance

{¶ 9} Vicky Young hired respondent to represent her in a civil-rights action against her employer. Respondent accepted a one-third contingent fee to represent Young.

{¶ 10} Respondent and Young attended a mediation conference in February 2006, where Young agreed to accept $6,000 to settle her claim. Respondent met with Young to sign the settlement and told her that he would "overnight" the agreement to opposing counsel to expedite receipt of the settlement proceeds. Respondent also informed her that she could revoke the settlement within 20 days.

{¶ 11} After a delay in receiving the settlement money, Young instructed respondent to revoke the settlement. But because respondent failed to revoke the settlement within the 20–day time period, Young was locked into a settlement she no longer wanted.

{¶ 12} Young made numerous attempts to contact respondent, who never responded. In May 2006, she learned that respondent had never sent the settlement paperwork to opposing counsel. Young fired respondent and worked directly with opposing counsel to obtain her $6,000 settlement. She had also paid respondent a $175 fee to meet with her former employer. Although the former employer refused to meet with them, respondent kept the fee.

{¶ 13} With respect to the above misconduct, the board found that respondent had violated DR 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

### Graves Grievance

{¶ 14} Jerrell Graves hired respondent to defend him against two felony charges and a misdemeanor. Graves paid respondent $900.

{¶ 15} Respondent made court appearances on Graves's behalf in Lucas County Common Pleas Court and Toledo Municipal Court, but respondent failed to appear for a scheduled court date in common pleas court on July 13, 2006. Graves tried several times to contact respondent, but respondent never returned his calls and was never available at his office when Graves appeared there in person.

{¶ 16} On August 2, 2006, respondent failed to appear at a pretrial in Toledo Municipal Court. Respondent also failed to inform Graves of the scheduled pretrial, and as a result, the municipal court issued a bench warrant for Graves when he failed to appear.

{¶ 17} Graves also gave respondent some documents relating to his felony charges that Graves believes are exculpatory. Respondent did not return these documents so that Graves's new counsel could use them in his defense.

{¶ 18} Based on the foregoing, the board found that respondent had violated DR 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3).

*Gardner Grievance*

{¶ 19} In May 2006, Alan Gardner retained respondent to represent him on a criminal domestic-violence charge. Gardner paid respondent $800 as a retainer.

{¶ 20} Respondent spoke with Gardner twice by phone and met with Gardner once in his office. Respondent appeared for a pretrial hearing in June 2006, but thereafter, Gardner was unable to contact respondent. Respondent did not return Gardner's phone calls, and when Gardner went to respondent's office, the office had been vacated. Gardner was forced to retain other counsel to complete his case.

{¶ 21} With regard to the Gardner matter, the board found that respondent had violated DR 1–102(A)(6), 6–101(A)(3), and 7–101(A)(2).

*Failure to Cooperate in Disciplinary Investigation*

{¶ 22} Beginning in March 2006, relator received five grievances against respondent. Relator made numerous attempts to contact respondent at various addresses, but each address proved to be either incorrect or out of date. In December 2006, relator retained an investigator affiliated with the Office of Disciplinary Counsel to locate respondent. After six months of diligent effort, the investigator was unsuccessful.

{¶ 23} Relator sent notices of four of the grievances to respondent. In May 2006, respondent contacted relator by phone, acknowledged receipt of the grievances, and promised to respond. No further communication was received from respondent, and further attempts to contact him proved futile.

{¶ 24} In June 2007, the board attempted to serve respondent with a copy of the complaint, but the complaint was returned with a notation that it was undeliverable as addressed and could not be forwarded. Service was later perfected through the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Respondent did not answer the complaint.

{¶ 25} By ignoring relator's investigative inquiries and failing to answer the complaint, respondent violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation).

Recommended Sanction

{¶ 26} In recommending a sanction, the board considered the following aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 27} As aggravating factors, the board found that respondent had acted with dishonest or selfish motives. BCGD Proc.Reg. 10(B)(1)(b). The board also found

a pattern of misconduct, multiple offenses, and a lack of cooperation in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(c), (d), and (e). Finally, the board noted the vulnerability of and resulting harm to the victims of respondent's misconduct and respondent's failure to make restitution. BCGD Proc.Reg. 10(B)(1)(h) and (i).

{¶ 28} In mitigation, the board found that respondent had no prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a). We do note, however, that respondent was briefly suspended in 2007 for failing to comply with this court's attorney-registration requirements.

{¶ 29} The relator and the master commissioner recommended that respondent be suspended from the practice of law indefinitely. The board adopted the recommendation.

## Review

{¶ 30} Respondent does not challenge the board's findings of misconduct or the recommended sanction. We have reviewed the board's record and its report, and we agree that respondent violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(6), 2–107(A)(1), 2–107(A)(2), 2–107(A)(3), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), 9–102(B)(3), and 9–102(B)(4) and Gov.Bar R. V(4)(G).

{¶ 31} We do not, however, accept the board's recommendation of an indefinite suspension. Disbarment is generally the sanction when a lawyer's neglect of a client's case is coupled with misappropriation of the client's money and other professional misconduct. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993.

{¶ 32} In this case, respondent has engaged in a continuous course of conduct involving deceit, misappropriation of clients' funds, neglect of clients' cases, failure to account for fees, failure to make restitution, and failure to cooperate in the investigation of this misconduct. Respondent's repeated misconduct demonstrates that he is not fit to practice law. Indeed, we have disbarred attorneys for similar misconduct. See *Disciplinary Counsel v. Lord*, 114 Ohio St.3d 466, 2007-Ohio-4260, 873 N.E.2d 273, and *Disciplinary Counsel v. Ross*, 107 Ohio St.3d 191, 2005-Ohio-6179, 837 N.E.2d 773.

{¶ 33} Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., dissents and would indefinitely suspend the respondent.

Jonathan B. Cherry and John A. Borell Jr., for relator.