**TOLEDO BAR ASSOCIATION *v*. BAKER**.

[Cite as *Toledo Bar Assn. v. Baker,* **122 Ohio St.3d 45, 2009-Ohio-2371.**]

*Attorneys — Misconduct — Multiple Disciplinary Rule violations, including neglecting entrusted legal matters, conduct involving dishonesty, fraud, deceit, or misrepresentation, and failing to cooperate in a disciplinary investigation — Indefinite suspension.*

(No. 2008-2506 — Submitted February 18, 2009 — Decided May 28, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-073.

_____

**Per Curiam**.

{¶ 1} Respondent, Gerald A. Baker of Holland, Ohio, Attorney Registration No. 0042316, was admitted to the practice of law in Ohio in 1989. Respondent's license to practice has been under suspension since January 9, 2009, for his failure to comply with the continuing legal education requirements of Gov.Bar R. X. See *In re Baker*, 120 Ohio St.3d 1462, 2009-Ohio-40, 899 N.E.2d 148.

{¶ 2} The Board of Commissioners on Grievances and Discipline now recommends that we indefinitely suspend respondent's license to practice, based on findings that he failed to diligently represent clients, commingled client funds with his own, failed to appropriately account for client funds in his possession, and converted settlement proceeds, among other ethical breaches. We agree that respondent committed professional misconduct as found by the board and that an indefinite suspension is appropriate.

{¶ 3} Relator, Toledo Bar Association, charged respondent with nine counts of misconduct involving numerous violations of the Disciplinary Rules of

the former Code of Professional Responsibility, the current Rules for Professional Conduct,[1] and Gov.Bar R. V(4)(G) (requiring a lawyer to assist in an investigation of misconduct). A panel of the board heard the case, dismissed some of the rule violations alleged in Counts I, II, III, IV, VII, VIII, and IX for lack of the requisite clear and convincing evidence, and then made findings of fact, conclusions of law, and a recommendation for indefinite suspension. The board adopted the panel's findings of misconduct and recommendation.

{¶ 4} The parties have not objected to the board's report.

## Misconduct

### Count I – The Copeland Case

{¶ 5} While representing Willie J. Copeland in a federal lawsuit against his labor union, respondent failed to apprise his client of a June 2005 order granting summary judgment in the union's favor. Though respondent claimed not to have received notice of the order, the federal court records indicated that he had been notified twice of the ruling. Copeland testified that he lost the opportunity to appeal because of respondent's neglect.

{¶ 6} The board found and respondent does not now dispute that he thereby violated DR 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter). We accept this finding of misconduct.

### Count II – The Sutton Case

{¶ 7} Kimberly and Bryan Sutton hired respondent in 2003 to represent them in a personal-injury claim. Respondent disbursed to the Suttons settlement checks totaling $2,049.40 but never accounted to them for the $617.85 legal fee that he had retained. The board found and respondent does not now dispute that

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. In specifying both the former and current rules for the same acts, the allegations comprise a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

he thereby violated DR 9-102(B)(3) (requiring a lawyer to maintain complete records of all funds coming into the possession of the lawyer and render appropriate accounts to the client). We accept this finding of misconduct.

### Count III – The Ector Case

**{¶ 8}** In October 2005, respondent settled a personal-injury case for Manio Ector for $2,500. Ector filed a grievance with relator when he did not immediately receive his share of the settlement. In March 2006, although respondent distributed $900 apparently as proceeds from the settlement, for the most part he had no explanation for what happened to the remaining $1,600. No evidence, however, shows that he misappropriated these funds.

**{¶ 9}** The parties stipulated that respondent failed to respond during relator's investigation of the Ector grievance. As a result, and because respondent did not appropriately account for undisbursed settlement funds, the board found violations of Gov.Bar R. V(4)(G) and DR 9-102(B)(3). We accept those findings of misconduct.

### Count IV – The Catchings Case

**{¶ 10}** Will R. Catchings paid respondent $750 in May 2004 to represent him in a dispute over the sale of real property. Catchings eventually complained to relator about respondent's performance. The parties stipulated that respondent failed to respond during the investigation of Catchings's grievance, and the board found him in violation of Gov.Bar R. V(4)(G). We accept this finding of misconduct.

### Count V – The Brown Case

**{¶ 11}** Doland Brown hired respondent in November 2005 to recover damages for injuries Brown sustained in an accident during February 2004. Brown paid respondent $500 for expenses, but respondent did not deposit those funds in his client trust account as required. He also failed to file suit before the expiration of the applicable two-year statute of limitations.

**{¶ 12}** Throughout 2006 and 2007, after respondent had missed the filing deadline, respondent continued to mislead Brown into thinking that his claim was still actionable. In September 2007, respondent gave Brown a $1,500 check that was purportedly paid by an insurance company to settle Brown's case. The check was actually drawn from respondent's client trust account.

**{¶ 13}** Respondent did not tell Brown of his negligence, disclose the possibility of a malpractice claim, or suggest that Brown consult independent counsel. Brown tried to deposit the check respondent gave him, but the bank dishonored it, and Brown incurred $239 in bank fees and service charges. Respondent, who neither had malpractice insurance nor disclosed this fact to his client, promised to pay Brown for his losses. Respondent had not done so as of the October 2008 panel hearing.

**{¶ 14}** The parties stipulated that respondent thereby violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on lawyer's fitness to practice law), 1-104(A) (requiring a lawyer to advise the client that the lawyer lacks malpractice insurance), 1-104(B) (requiring a lawyer to maintain a copy of the notice of lack of malpractice insurance that has been signed by the client), and 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), as well as Prof.Cond.R. 1.8(h)(2) (prohibiting a lawyer from settling a potential claim for professional liability without advising the client in writing to seek counsel or obtaining the client's informed consent), 1.15 (requiring a lawyer to safeguard client funds in a separate, identifiable bank account and to maintain appropriate records), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting

4

conduct that adversely reflects on the lawyer's fitness to practice law). The board found this misconduct, and we accept those findings.

### Count VI – The Smith Case

{¶ 15} Shirley Smith retained respondent in 2006 to prepare and record quitclaim deeds. Respondent prepared some or all of the deeds but then failed to record them. He can no longer find the deeds.

{¶ 16} The parties stipulated that respondent thereby violated DR 6-101(A)(3). The board found this misconduct, and we accept that finding.

### Count VII – The Welch Case

{¶ 17} Linda Welch hired respondent in November 2004 to recover damages for injuries she had recently sustained in a traffic accident. At that time, respondent did not have any professional liability insurance, and he did not inform his client of this fact. Respondent also failed to file suit in the Welch case before the applicable statute of limitations expired.

{¶ 18} The parties stipulated that respondent thereby violated DR 1-104(A) and (B) and 6-101(A)(3). The board found this misconduct, and we accept those findings.

### Count VIII – The Worden Case

{¶ 19} After her disability insurance benefits were terminated in 2004, Diane Worden hired respondent to seek reinstatement of the payments and to recover those that she had lost. Respondent filed suit on his client's behalf in June 2005, but in September 2006, he dismissed the action by agreement of counsel. Respondent failed to obtain his client's consent for the dismissal.

{¶ 20} In November 2007, respondent misled Worden about the status of her case, implying that the case was still pending. Worden did not learn that the case had been dismissed until December 2007, after she had filed a grievance with relator. By then, her claim had expired.

{¶ 21} The board found and respondent does not dispute that he thereby violated DR 1-102(A)(4) and 6-101(A)(3) and Prof.Cond.R. 8.4(c). We accept those findings of misconduct.

*Count IX – The Washington Mutual Case*

{¶ 22} Long Beach Mortgage Company, a subsidiary of Washington Mutual Bank ("WaMu"), obtained a judgment in foreclosure against Terry Lincoln and others. The debtors hired respondent to represent them in February 2006, after the property caught fire. Respondent negotiated a $34,380 settlement with the insurer of the property, and the insurer sent respondent a check made payable to him, Lincoln, and WaMu.

{¶ 23} Respondent held the check while he negotiated with WaMu about how to distribute the settlement proceeds. In May 2006, WaMu agreed to have respondent deposit the check in his client trust account while they completed their negotiations. In making the deposit, respondent retained $1,500 in cash, depleting the funds to be held in trust to $32,880.

{¶ 24} Before his deposit, respondent's trust account had been overdrawn by approximately $40. Respondent's bank records showed that the account was also intermittently overdrawn during eight months in 2006. After the bank closed the account in January 2007, it was reopened; but because of overdrafts in September, October, and November of that year, the bank closed the account again.

{¶ 25} In December 2006, WaMu sued respondent and Lincoln, claiming conversion of the insurance settlement check, and obtained a default judgment against respondent for $34,380, plus interest, costs, and attorney fees. The judgment entry directed respondent to remit these funds within seven days of the order. As of the hearing in this matter, he had not done so.

{¶ 26} The parties stipulated that respondent had thereby violated DR l-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral

turpitude), l-102(A)(4), l-102(A)(6), and 9-102(B)(3), as well as Prof.Cond.R. 1.15(a), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.1(b) (prohibiting a lawyer from knowingly failing to respond or to disclose a material fact to a disciplinary authority), 8.4(d), and 8.4(h). The board found this misconduct, and we accept those findings.

## Sanction

{¶ 27} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. Stark Cty. Bar Assn. v. Buttacavoli, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Lake Cty. Bar Assn. v. Troy, 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

{¶ 28} Respondent breached his duties to his clients by his deception, failure to provide diligent representation, failure to provide notice that he lacked malpractice insurance, commingling of personal and entrusted funds, failure to maintain appropriate records of and account for entrusted funds, and conversion. He breached his duty to the public and legal profession by failing to assist in enforcing the disciplinary system. Moreover, he breached his duty to the judicial system by failing to comply with a court order.

{¶ 29} Respondent has committed a host of ethical infractions, including misappropriation of client funds. We routinely disbar attorneys for such misconduct. See, e.g., Toledo Bar Assn. v. Mason, 118 Ohio St.3d 412, 2008-Ohio-2704, 889 N.E.2d 539; Cuyahoga Cty. Bar Assn. v. Mazanec, 114 Ohio St.3d 427, 2007-Ohio-4268, 872 N.E.2d 1209; Cleveland Bar Assn. v. Glatki (2000), 88 Ohio St.3d 381, 726 N.E.2d 993. Yet when mitigating factors

significantly outweigh aggravating factors, we have instead ordered the indefinite suspension of a lawyer's license.  Cincinnati Bar Assn. v. Lawson, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749.

{¶ 30} The board found respondent's dishonest and selfish motives, pattern of offenses, multiple offenses, lack of cooperation in the disciplinary process, vulnerable victims, and failure to make restitution as aggravating factors. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (h), and (i).  Weighing heavily in his favor, however, is evidence that respondent suffers from a qualifying mental disability under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv) (requiring proof of (i) a diagnosis of mental disability by a qualified health-care professional, (ii) a determination that mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional that the attorney will be able to return to competent, ethical professional practice under specified conditions).

{¶ 31} Respondent has been under the care of Larry E. Hamme, Ph.D., a clinical psychologist, since April 2007.  Dr. Hamme diagnosed respondent with depression and posttraumatic stress disorder partially related to respondent's military service in Vietnam during the early 1970s.  Dr. Hamme reported that respondent had never dealt with several life-altering incidents, including his involvement in a motor vehicle accident while in the service that caused his best friend's death, his severe injury from being stabbed while a soldier, the death of his infant child, and more recently the deaths of his wife and then of a girlfriend. Dr. Hamme explained in detail the overwhelming effects of these events and how in later years those effects caused respondent's lethargy, lack of motivation, and inability to complete tasks.

{¶ 32} In adopting the panel report, the board summarized Dr. Hamme's findings:

{¶ 33} "Dr. Hamme testified that the clinical conditions that Respondent was experiencing would impact his ability to complete the day to day activities of the practice of law. He believes that Respondent's depression has been with him for a very long time and that it could very well have existed back into his childhood. Dr. Hamme testified that he believed what happened to Respondent is that he 'reached a critical mass' to a point where he could no longer function. He believed however that with treatment, the prognosis for Respondent was good and that if he takes care of the medical problems with which he is now dealing, including an irregular heart rate and sleep apnea, he has a good prognosis."

{¶ 34} Dr. Hamme confirmed a causal connection between some of respondent's misconduct and his mental disability, professing "a very strong reason to believe that the clinical conditions that he was experiencing would impact his ability to complete some of the day-to-day activities." Respondent had been a sole practitioner when he began treatment but more recently had become associated in practice with other lawyers. Dr. Hamme testified that this affiliation was helpful in reducing the stressors of respondent's daily legal practice.

{¶ 35} Stephanie Krznarich, clinical director of the Ohio Lawyers Assistance Program ("OLAP"), also testified to respondent's diagnosis and commitment to a contract with terms to improve his mental health. She reported that respondent is receiving the assistance he needs to resolve his mental-health problems, including following the recommendations of his primary-care physician and his sleep doctor and taking his medications as prescribed. Krznarich advocated in favor of a sanction less severe than disbarment, explaining:

{¶ 36} "[H]e's made changes in his life, he's made changes in his diet, he's made changes in addressing the sleep apnea, he's now getting adequate amounts of oxygen, he's not fighting to breathe throughout the entire night so it's a much more restful sleep, he's continuing to address the post-traumatic stress disorder and working on that actively, he's taking his medication. * * * So I

believe that the symptoms that brought him to OLAP are resolved or are being resolved."

{¶ 37} The board accepted the testimony of both mental-health professionals in mitigation, concluding that although the testimony was "imprecise in defining the exact cause and effect relationship between the conditions and all of the behaviors," it was not difficult to believe that "the horrific incidents described by Dr. Hamme and Respondent could cause Respondent to refuse to deal with clients and the financial accounting of running a law practice." Moreover, respondent offered compelling testimony expressing his regret for his bad acts and omissions, particularly the conversion, for which he is facing criminal charges. He conceded that there was "no excuse for the * * * theft" and promised to make restitution. Finally, respondent submitted references from three attorneys, a municipal court judge, and Lucas County Common Pleas Court Judge Charles Doneghy, who in particular extolled respondent's work as a trial attorney and applauded his pro bono work.

{¶ 38} In recommending an indefinite suspension, the board reasoned:

{¶ 39} "The vast majority of the violations found in this matter are impacted by Respondent's mental health issues. Respondent did show serious remorse for his actions. He is likely to suffer criminal consequences as a result of his acts. The panel cannot ignore the request made by Judge Doneghy to allow Respondent to continue his fine pro bono work with the African-American population. As this Supreme Court has recognized in Cincinnati Bar Assn. v. Lawson, 119 Ohio St.3d 58, 2008-Ohio-3340, [891 N.E.2d 749,] the primary purpose of disciplinary sanction is to protect the public. The court noted in that case that even in cases of egregious misconduct, an indefinite suspension may be appropriate. After hearing all of the evidence here, [we have] concluded that with continued treatment and the safeguards set forth in the sanction that Respondent will not be a threat to the public and deserves a chance to return to practice law."

**{¶ 40}** The board recommended respondent's compliance with the following conditions as safeguards for his possible reinstatement to practice:

**{¶ 41}** "1) Full restitution to Doland Brown in the amount of $1739.00 in bank fees and service charges;

**{¶ 42}** "2) Full payment of the judgment in the Washington Mutual matter in the amount of $34,380.00 plus interest, costs and attorney fees;

**{¶ 43}** "3) Evidence of ongoing compliance with his OLAP contract;

**{¶ 44}** "4) Evidence from a competent mental health professional certifying compliance with OLAP treatment recommendations and that Respondent is capable of returning to the competent practice of law."

**{¶ 45}** We accept the sanction recommended by the board. Respondent is indefinitely suspended from the practice of law in Ohio. In addition to the requirements of Gov.Bar R. V(10)(B) through (E), respondent's petition for reinstatement shall be subject to the conditions cited above. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Barry & Feit and Gordon R. Barry; MacMillan, Sobanski & Todd, L.L.C., and Richard S. MacMillan; and Jonathan B. Cherry, Bar Counsel, for relator.

Law Office of James D. Caruso and James D. Caruso, for respondent.

_____