DISCIPLINARY COUNSEL ET AL *v.* BURSEY.

[Cite as *Disciplinary Counsel v. Bursey,* 124 Ohio St.3d 85, 2009-Ohio-6180.]

*Attorney misconduct, including misappropriating money held in trust for clients, forging clients' signatures, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation — Disbarment.*

(No. 2009-1255 — Submitted September 2, 2009 — Decided December 2, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, Nos. 08-053 and 08-054.

_____

**Per Curiam**.

{¶ 1} Respondent, Charles Edward Bursey II, Attorney Registration No. 0073962 and registration address in Centerville, Ohio, was admitted to the practice of law in Ohio in 2001. On September 30, 2008, we suspended respondent's license to practice on an interim basis pursuant to Gov.Bar R. V(5a), upon finding that he posed a substantial threat of serious harm to his clients and the public. See *Dayton Bar Assn. v. Bursey*, 119 Ohio St.3d 1465, 2008-Ohio-4989, 894 N.E.2d 326.

{¶ 2} The Board of Commissioners on Grievances and Discipline now recommends that as our final disposition in this case, we permanently disbar respondent. The recommendation is based on findings that he misappropriated money held in trust for clients, forged clients' signatures, commingled client funds with his own, and committed numerous other acts of professional misconduct. We agree that respondent's repeated breaches of ethical duties warrant disbarment.

{¶ 3} Relators, Disciplinary Counsel and the Dayton Bar Association, charged respondent with a total of 11 counts, alleging violations of the Rules of

Professional Conduct and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation). Efforts to serve respondent with notice of the complaints at his last known addresses through regular and certified mail were unsuccessful, and the board served the notice on the clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B) (clerk is agent for service of process on an Ohio attorney who conceals his whereabouts).

{¶ 4} Respondent, who had appeared for his deposition and knew that he was under investigation for ethical infractions, did not answer the complaints. Thus, after the board chairman ordered the cases consolidated, relators jointly moved for default pursuant to Gov.Bar R. V(6)(F). The secretary of the board referred the motion to a master commissioner pursuant to Gov.Bar R. V(6)(F)(2). The master commissioner granted the motion, making findings of fact and conclusions of law and recommending disbarment. The board adopted the master commissioner's findings of misconduct and recommendation to disbar.

## I. Misconduct

### A. Disciplinary Counsel's Complaint

1. Count One

{¶ 5} In September 2007, respondent settled a personal-injury action on behalf of a client for $91,948.64 and obtained a settlement check made payable to the client, her husband, and him. Pursuant to their contingent-fee agreement, the client was to receive 75 percent of the settlement, or $68,961.48, and respondent was to receive 25 percent, or $22,987.16. After the client and her husband signed the settlement check over to respondent, however, he presented the client with a check drawn on his client trust account for only $66,948.64. Respondent never explained or otherwise accounted to his client for the $2,012.84 shortfall.

{¶ 6} Because respondent had slightly altered the payee line on the check, the client's bank refused to honor it. When asked by the client for a replacement, respondent stated that he could pay only $40,000 of the amount

2

owed. Respondent paid the client $40,000 on October 1, 2007, from his client trust account, leaving a balance of $1,948.58. At least $25,000.06 was still owed to his client. Respondent remitted another $26,000 to the client in the following weeks, but the check was drawn on a credit-union account rather than his trust account. Respondent eventually stopped returning his client's calls and never paid her the rest of the settlement money.

{¶ 7} Because of respondent's conduct regarding the settlement in this client's case, the board found him in violation of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a legal matter), 1.5(a) (prohibiting a lawyer from charging or collecting an illegal or excessive fee), 1.5(c)(2) (requiring lawyers who are entitled to compensation under a contingent-fee agreement to prepare a closing statement and provide it to the client at the time of or prior to the lawyer's receiving compensation), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). We accept these findings of misconduct.

2. Count Two

{¶ 8} Between July 1 and November 30, 2007, respondent overdrew his client trust account on 11 separate occasions. During that time, he improperly withdrew most of a client's $4,000 share of settlement proceeds and then wrote the client a postdated $4,000 check, which was dishonored for insufficient funds. Respondent wrote a second $4,000 check to the client after he deposited the $91,948.64 settlement discussed in Count One. From those same settlement

proceeds, respondent also wrote checks totaling over $10,000 to pay another client's medical bills and to pay money owed to two other clients.

{¶ 9} During a period in October 2007, respondent drew down the trust account to zero and then wrote a $400 check from the account to an Indiana casino. The check was dishonored, and the next month, the casino resubmitted the check three times with the same results. Respondent wrote another check that November from his client trust account, trying to pay $2,500 in medical bills for another client. That check was also dishonored.

{¶ 10} On one day that October, respondent's client trust account contained approximately $3,000, made up of a $2,500 settlement and three other checks totaling approximately $500. Although one of his clients was entitled to $1,468.67 (two-thirds of the settlement, less $198 for her medical bills) under a contingent-fee agreement, respondent wrote two checks to himself, which he cashed that day: one for $900, ($66.67 more than his $833.33 attorney fee) and another for $1,400. Thus, by the close of business, respondent had misappropriated settlement proceeds belonging to his client, leaving a balance of $705.67 in his client trust account.

{¶ 11} Several days later, respondent cashed a $700 check drawn on the trust account, leaving a balance of $5.67. The same day, two checks that respondent had written from the account—one to pay the client to whom he owed $1,468.67 and the other to pay her medical bills—were dishonored for insufficient funds. Respondent later paid the client with cashier's checks.

{¶ 12} Finally, in late November 2007, respondent attempted to pay personal expenses for a rental car and cell-phone service with checks drawn on his client trust account. The checks were dishonored for insufficient funds.

{¶ 13} Because respondent had misappropriated client funds and commingled client funds with his own, the board found him in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to keep client funds in the lawyer's

possession separate from the lawyer's funds), 1.15(d), 8.4(c), and 8.4(h). We accept these findings of misconduct.

3. Count Three

{¶ 14} In July 2006, respondent agreed to represent a client on a one-third contingent-fee basis in a lawsuit for injuries she sustained in an automobile accident. Respondent failed to keep the client apprised of developments in the case and rarely returned her calls.

{¶ 15} In March 2008, the client filed a grievance against respondent. While meeting with Disciplinary Counsel's representative during the investigation, respondent offered to complete work in the case for a reduced one-fourth contingent fee. The client agreed after respondent promised to call her weekly until the claim was resolved. Respondent did not honor his promise, and in early June 2008, the client discharged him. Respondent never returned the client's file as requested, and his neglect forced her to retain another attorney with less than six weeks remaining on the statute of limitations.

{¶ 16} Because respondent failed to conscientiously represent this client and then deserted her, the board found him in violation of Prof.Cond.R. 1.3, 1.4(a)(3), 1.16(d) (requiring a lawyer upon termination of representation to take the steps reasonably necessary to protect a client's interest, including giving due notice to the client, allowing reasonable time for the employment of other counsel, and delivering to the client all papers and property to which the client is entitled), and 8.4(h). We accept these findings of misconduct.

4. Count Four

{¶ 17} In August and September 2007, Disciplinary Counsel sent respondent a letter of inquiry by certified mail concerning irregularities in his client trust account. Although either he or his agent signed the receipts for the letters, respondent did not respond. Disciplinary Counsel faxed the August and September letters to respondent in November. In late January 2008, after being

served with a subpoena, respondent responded in writing to the inquiries. Another letter of inquiry sent in March 2008 by certified mail to respondent's attorney-registration address came back unclaimed.

{¶ 18} In April 2008, respondent appeared for his deposition. He offered an updated address at that time, which he also supplied to this court for attorney-registration purposes; however, the address turned out to be invalid. Respondent also promised to provide records, including monthly account statements of transactions, client ledgers, and records reconciling deposits and disbursements for his client trust account. He never did.

{¶ 19} Because respondent failed to maintain required records for his client trust account, the board found him in violation of Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held that sets forth (i) the client's name, (ii) the date, amount, and source of all funds received on behalf of the client, (iii) the date, amount, payee, and purpose of each disbursement, and (iv) the current balance for the client), 1.15(a)(3) (requiring a lawyer to  maintain a record for each bank account that includes (i) the name of the account, (ii) the date, amount, and client affected by each credit and debit, and (iii) the balance in the account), 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and canceled checks, if provided by the bank, for each bank account), 1.15(a)(5) (requiring a lawyer to perform and maintain a monthly reconciliation of the items listed in Prof.Cond.R. 1.15(a)), and 8.4(h).

### B.  The Dayton Bar Association's Complaint

{¶ 20} The Dayton Bar Association configured its complaint, as amended, differently from the way Disciplinary Counsel configured his complaint, charging in each of seven counts that respondent had violated one Professional Conduct Rule relative to multiple clients. The allegations implicated respondent's duties to

protect the interests of six clients and to respond appropriately during disciplinary investigations.

1. Client No. 1

{¶ 21} Respondent represented a client in a personal-injury action stemming from an automobile accident. In early January 2008, respondent accepted a $5,529 settlement check made out to him, the client, and the client's wife. The settlement terms required the client to sign a release and file an entry of dismissal before negotiating the check.

{¶ 22} Respondent negotiated the check three days after he received it, without providing opposing counsel with a signed release or filing for dismissal. He forged the other payees' signatures on the check and deposited it into his bank account. He then ignored his client's calls.

{¶ 23} The client reached respondent later that January at his office. Respondent gave the client a release for him and his wife to sign and return to respondent and issued him a check for $2,994, representing the client's share of the settlement. Respondent did not give his client a closing statement, and when the client tried several times to negotiate the check, it was dishonored.

{¶ 24} Like the client, opposing counsel in the case also had difficulty contacting respondent. The lawyer ultimately moved to enforce the settlement agreement, and his motion was granted. Respondent's client, however, has not received any of the settlement money, nor has respondent paid the client's medical bills as promised.

{¶ 25} Because of respondent's conduct regarding this client, the board found him in violation of Prof.Cond.R. 1.4(a)(3), 1.5(c)(2), 1.15(a), 1.15(d), 8.4(c), and 8.4(h). We accept these findings of misconduct.

2. Client No. 2

{¶ 26} Another client hired respondent to file a motion for change of custody. Respondent filed the motion in October 2007, and in January 2008, the

two discussed filing a motion for contempt of a visitation order. A hearing was scheduled on the change-of-custody and contempt motions for early March 2008. For the entire month before the hearing, however, respondent did not return his client's calls.

**{¶ 27}** The board found that respondent had thereby violated Prof.Cond.R. 1.4(a)(3) and 8.4(h). We accept these findings of misconduct.

3. Client No. 3

**{¶ 28}** In October 2007, a client hired respondent to recover damages for injuries he had sustained in an automobile accident. Respondent referred the client to a chiropractor and told the client that the chiropractor's bill would be paid from settlement proceeds. The client's treatment resulted in a bill of over $2,000.

**{¶ 29}** In early 2008, respondent advised the client that respondent's son had been hospitalized, which prompted the client to request the return of his file. Respondent told the client that he would "receive less money if [respondent] did not represent [him]." Respondent promised to contact the client again but never did. The client nevertheless managed to speak with respondent once more by having a coworker patch him into a telephone conversation that the coworker was having with respondent. The client again asked for his file.

**{¶ 30}** Despite their efforts, neither the client nor his chiropractor was able to locate respondent. The client called respondent many times, with no success. The chiropractor has not been paid and may have started collection proceedings against the client.

**{¶ 31}** The board found that respondent thereby violated Prof.Cond.R. 1.4(a)(3), 8.4(c), and 8.4(h). We accept these findings of misconduct.

4. Client No. 4

**{¶ 32}** A fourth client, injured in another automobile accident, hired respondent to recover for the damage to his car and for his injuries. In March

2007, respondent represented in writing to the other driver's insurer that he was authorized to settle all claims for $15,000. Respondent's client, however, had never given him settlement authority. The following month, the insurer sent a check payable to respondent's law firm and the client for $4,250. Respondent had earlier agreed that he would not negotiate the check until his client signed a release, and all medical expenses were paid.

{¶ 33} Respondent then forged his client's name on the settlement check and deposited it into his bank account. He told his client, however, that he had returned a $4,000 settlement check to the insurer because the offer was too low. Respondent has not paid his client or the client's medical provider.

{¶ 34} Because of respondent's conduct with regard to this client, the board found him in violation of Prof.Cond.R. 1.4(a)(3), 1.5(c)(2), 1.15(a), 1.15(d), 8.4(c), and 8.4(h). We accept these findings of misconduct.

5. Client No. 5

{¶ 35} A fifth client hired respondent in April 2008 to represent her in a divorce proceeding. Respondent accepted the case for a $1,000 fee, with $600 to be paid when the client signed the documents, and installment payments for the remaining $400 to be made after he filed the complaint.

{¶ 36} The client paid respondent later that month, giving him $400 in cash and a postdated check for $200 that respondent promised not to cash until two days later. But the next day, the client learned that respondent had cashed the check early, which depleted her bank account. When she next spoke with respondent, he denied having cashed the check early. The client has been unable to contact respondent since this conversation, and he has never filed her divorce complaint.

{¶ 37} Because respondent misappropriated money from this client and then deserted her, the board found him in violation of Prof.Cond.R. 1.4(a)(3), 8.4(c), and 8.4(h). We accept these findings of misconduct.

6. Client No. 6

**{¶ 38}** Respondent's appointment as guardian of a minor child's estate ended in early March 2002. Though he had no further authority or obligations with regard to the estate, he made three separate withdrawals in November 2007 from the estate bank account. During a five-day period that month, respondent withdrew $10,475, leaving a balance of $10.92. He then failed to appear at a hearing before the presiding judge regarding the account.

**{¶ 39}** Because he misappropriated funds from the minor's estate, the board found respondent in violation of Prof.Cond.R. 4.1 (prohibiting a lawyer from making a statement to a third person during representation that the lawyer knows to be false), 8.4(c), and 8.4(h). We accept these findings of misconduct.

7. Failure to Appropriately Respond During Investigations of Misconduct

**{¶ 40}** Dayton Bar Association investigators attempted to obtain responses to all the grievances filed in the preceding six cases, but respondent repeatedly ignored their efforts. Investigators sent letters to respondent at three separate addresses, left voice messages for him, and sent e-mails and facsimiles to him to no avail. Respondent also failed to appear at a meeting after agreeing to attend. He once left a voice message for an investigator indicating his post office address, yet he did not schedule the appointment that the investigator had requested.

**{¶ 41}** The board found that respondent thereby violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G). We accept these findings of misconduct.

## II. Sanction

**{¶ 42}** In *Toledo Bar Assn. v. Mason*, 118 Ohio St.3d 412, 2008-Ohio-2704, 889 N.E.2d 539, ¶ 31, we held that "[d]isbarment is generally the sanction when a lawyer's neglect of a client's case is coupled with misappropriation of the

client's money and other professional misconduct," citing *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993. In *Mason*, a lawyer failed to pay settlement proceeds owed to a client, wrote a bad check to a client, failed to pay medical bills from settlement proceeds as promised, ignored clients' calls, and failed to cooperate in the investigation of this misconduct, forcing the board to resolve the resulting charges on default. We permanently disbarred the lawyer for having engaged in "a continuous course of conduct involving deceit, misappropriation of clients' funds, neglect of clients' cases, failure to account for fees, failure to make restitution, and failure to cooperate in the investigation of this misconduct," finding that he was not fit to practice law. Id., ¶ 32.

**{¶ 43}** Permanent disbarment is appropriate here as well. Respondent's egregious activity involved many clients who were harmed by his multiple violations of the Rules of Professional Conduct. He has provided no mitigation for his conduct. Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

Faruki, Ireland & Cox, P.L.L., and D. Jeffrey Ireland; and Gregory T. Scott, for relator Dayton Bar Association.

_____