CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* HILDEBRAND.

[Cite as *Cleveland Metro. Bar Assn. v. Hildebrand*,

127 Ohio St.3d 304, 2010-Ohio-5712.]

*Attorney misconduct, including failing to comply as soon as practicable with a client's reasonable request for information, collecting a clearly excessive fee, failing to promptly deliver funds that the client is entitled to receive, and failing to cooperate in a disciplinary investigation — Permanent disbarment.*

(No. 2010-1199 — Submitted September 15, 2010 — Decided December 1, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-071.

————————————

**Per Curiam**.

{¶ 1} Respondent, John Patrick Hildebrand Jr., Attorney Registration No. 0068874, whose last known business address is in Fairview Park, Ohio, was admitted to the practice of law in Ohio in 1997. In November 2009, we imposed an attorney-registration suspension upon him for failure to file a certificate of registration and pay applicable fees on or before September 1, 2009, in accordance with Gov.Bar R. VI. See *In re Hildebrand*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256.

{¶ 2} On August 17, 2009, relator, Cleveland Metropolitan Bar Association, filed a complaint charging respondent with 16 counts of professional misconduct arising from his representation of three separate clients. The complaint alleged that he accepted a retainer from each of these clients, failed to provide any meaningful professional services, failed to advise his clients of his

progress, failed to timely deliver the clients' files to them upon request, and failed to cooperate in the ensuing disciplinary investigations.

{¶ 3} The complaint was served on respondent at his last known business address, and the certified-mail receipt was signed by M.A. Szoradi on August 21, 2009. Because respondent failed to file an answer to the complaint, relator moved for default judgment on February 24, 2010. In support of its motion, relator submitted affidavits from Heather Zirke, assistant bar counsel, Steven Wasserman, relator's investigator, the three grievants, and two other persons, as well as copies of correspondence between the Office of Disciplinary Counsel and the Cuyahoga County Prosecutor's Office.

{¶ 4} A master commissioner appointed by the board considered the motion for default and prepared a report containing findings of fact and misconduct and recommending that respondent be permanently disbarred. The board adopted the master commissioner's report in its entirety. We agree that respondent has committed professional misconduct as found by the master commissioner and the board and that permanent disbarment is warranted.

**Misconduct**

*Client One*

{¶ 5} In March 2007, a woman retained respondent to represent her son in a criminal appeal and to have her son's bond reduced. By March 15, the woman had paid respondent $5,000. And although he received an additional $900 as a cost deposit for the trial transcript, respondent did not forward the payment to the court reporter. The day before the trial transcript was due in the court of appeals, the client discovered that respondent had not filed it. The client's fiancée borrowed $900 and paid the court reporter for the transcript. Respondent advised the fiancée that he would reimburse her when she delivered the transcript to his office for copying, but he did not do so. Despite repeated requests from the client's mother, respondent did not refund the $900 cost deposit.

**{¶ 6}** Respondent also ignored repeated requests from the client's mother for information regarding the status of the appeal and claimed that she owed him additional money for work performed. After the appellate court dismissed the client's appeal, the client, through his mother, terminated respondent's representation and obtained new counsel. Respondent failed to heed requests to forward the client's file to the new attorney.

**{¶ 7}** In October 2008, the client's mother filed a grievance with relator. Respondent, however, ignored letters and telephone calls requesting his written response to the grievance and copies of his client file. After being served with a subpoena duces tecum for his file, accounting records, and proof of professional-liability insurance, respondent sent a letter seeking an extension of time and promising to provide the requested materials by January 30, 2009. As of February the following year, respondent had not provided the subpoenaed materials.

**{¶ 8}** The master commissioner and board found that respondent's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep his client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 1.15 (requiring a lawyer to preserve the identity of client funds and property and promptly deliver funds or other property that the client is entitled to receive), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

*Client Two*

**{¶ 9}** In March 2008, a man retained respondent to represent him in a replevin action against a former girlfriend. The client provided him with a detailed list of the personal property he sought to recover and paid a retainer of $500 plus a cost deposit of $125. Respondent never filed the replevin action, never responded to the client's numerous efforts to communicate with him, and did not refund the client's money.

**{¶ 10}** In August 2008, the client filed a grievance with relator. Relator sent respondent letters via certified and regular mail requesting his written response to the grievance. On September 24, 2008, assistant counsel for relator spoke with respondent, who claimed that he continued to represent the client and promised to submit a written response by October 1, 2008, explaining the steps that he had taken to resolve the matter. When counsel for relator spoke with him two days later, respondent claimed to have sent the written summary by mail, and on October 6, 2008, when relator had not received it, respondent faxed relator his written response.

**{¶ 11}** In the subpoena duces tecum that relator issued with respect to the client in count one, relator also requested a copy of respondent's file, accounting records, and proof of professional-liability insurance with respect to the client in count two. Although respondent promised to provide the requested materials by January 30, 2009, he did not do so. Based upon these facts, which are contained in the affidavits of the client, relator's investigator, and relator's assistant counsel, the master commissioner and board concluded that respondent's conduct violated Prof.Cond.R. 1.3, 1.4(a)(3) and (4), 1.5(a), and 8.1(b) and Gov.Bar R. V(4)(G).

*Client Three*

**{¶ 12}** In late November or early December 2008, a third client sought respondent's assistance with a domestic-relations matter. Respondent cashed a $200 check that the client's father had sent as a payment toward his quoted fee of $500. After accepting this money, respondent failed to respond to the client's

numerous telephone calls. Unable to schedule an appointment with respondent, the client had to retain new counsel just days before a scheduled court appearance. Although the client's father left numerous telephone messages and sent respondent a certified letter demanding return of his $200, respondent did not refund the money.

{¶ 13} In February 2009, the client's father filed a grievance with relator. Respondent did not respond to a letter from relator's investigator requesting a copy of the client's file and a meeting to discuss the matter.

{¶ 14} Based upon these facts, which were set forth in affidavits from the client, the client's father, relator's investigator, and relator's assistant counsel, both the master commissioner and board concluded that respondent's conduct violated Prof.Cond.R. 1.3, 1.4(a)(3) and (4), 1.5(a), and 8.1(b) and Gov.Bar R. V(4)(G).

*Additional Efforts to Communicate with Respondent*

{¶ 15} On July 22, 2009, relator sent respondent a notice of intent to file a formal complaint with the board via regular and certified mail and explained that he was required to submit a response no later than August 3, 2009, if he wished the probable-cause panel to consider it. The certified letter was delivered on July 23, 2009, and the letter sent by regular mail was not returned to relator as undeliverable.

{¶ 16} On August 4, relator received a fax from respondent, who claimed that he had been unable to timely respond to the formal complaint because he had been in a car accident. The next day, relator advised respondent that a complaint would be submitted to the board and that he should send his written response to the board by August 14 if he wished it to be considered by the probable-cause panel. Respondent submitted a written response to relator on that date, but did not submit this response to the board. On October 9, 2009, relator sent respondent, via certified and regular mail, a notice of intent to file a motion for default. The

certified letter was delivered the next day, and the letter sent by regular mail was not returned as undeliverable.

**{¶ 17}** The board sent respondent a copy of its findings of fact and conclusions of law and recommendation, and on July 21, 2010, this court issued an order to show cause, advising respondent that any objections to the board report were due within 20 days of that order. No objections have been filed.

### Sanction

**{¶ 18}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 19}** No mitigating factors are present. See BCGD Proc.Reg. 10(B)(2)(a) through (h). The board found as aggravating factors that respondent is currently under a registration suspension and was previously suspended by this court in 2005 for failure to register. BCGD Proc.Reg. 10(B)(1)(a); *In re Hildebrand*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256; and *In re Hildebrand*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.[1] He has committed multiple ethical violations, and his misconduct has caused economic harm to all the affected clients and jeopardized the appeal rights of one client. BCGD Proc.Reg. 10(B)(1)(d) and (h). He has failed to cooperate and has made

---

1. Although the board also noted that respondent has previously been suspended for failing to meet the requirements regarding continuing legal education, we observe that Gov.Bar R. X(5)(C) prohibits consideration of this fact in the imposition of disciplinary sanctions pursuant Gov.Bar R. V(8).

false statements during the course of these disciplinary proceedings. BCGD Proc.Reg. 10(B)(1)(e) and (f). We accept these findings.

{¶ 20} Respondent has collected fees from clients and failed to perform the agreed-upon services. He has ignored his clients' inquiries about the status of their cases and their requests for refunds when it became apparent that he was not performing any work on their behalf. He has made false statements to relator regarding his intentions to respond to the resulting grievances and failed to provide any meaningful cooperation in the resulting disciplinary proceedings. Moreover, his limited participation in relator's investigation demonstrates that his disregard of the disciplinary process was intentional.

{¶ 21} "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client," and permanent disbarment is the "presumptive disciplinary measure for such acts." *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16. See also *Disciplinary Counsel v. Horan*, 123 Ohio St.3d 60, 2009-Ohio-4177, 914 N.E.2d 175, ¶ 22; *Warren Cty. Bar Assn. v. Marshall*, 121 Ohio St.3d 197, 2009-Ohio-501, 903 N.E.2d 280, ¶ 20-21; *Cleveland Bar Assn. v. Helfgott*, 109 Ohio St.3d 360, 2006-Ohio-2579, 847 N.E.2d 1212, ¶ 17-18; and *Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16.

{¶ 22} Having reviewed the record and the sanctions imposed for comparable conduct and considered the aggravating factors and the complete absence of mitigating evidence, we adopt the board's findings of fact, conclusions of law, and recommended sanction.

{¶ 23} Accordingly, John Patrick Hildebrand Jr. is permanently disbarred from the practice of law in the state of Ohio. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., dissents and would indefinitely suspend the respondent from the practice of law in Ohio.

_____

Squire, Sanders, & Dempsey, L.L.P., Rebecca W. Haverstick, and Robert E. Haffke, for relator.

_____