[Cite as *Disciplinary Counsel v. Tomson,* 136 Ohio St.3d 71, 2013-Ohio-2154.]

DISCIPLINARY COUNSEL *v.* TOMSON.

[Cite as *Disciplinary Counsel v. Tomson,* 136 Ohio St.3d 71, 2013-Ohio-2154.]

*Attorneys—Misconduct—Neglect of entrusted legal matters—Failure to perform contracted work—Failure to cooperate in disciplinary investigation— Permanent disbarment.*

(No. 2012-2068—Submitted February 6, 2013—Decided June 4, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-020.

————————————

**Per Curiam**.

{¶ 1} Respondent, William Leonard Tomson Jr. of Cleveland, Ohio, Attorney Registration No. 0033832, was admitted to the practice of law in Ohio in 1971.

{¶ 2} In an April 2012 complaint, relator, disciplinary counsel, alleged that Tomson had agreed to pursue postconviction relief on behalf of two separate clients, taken excessive amounts of money from them, made false promises regarding the anticipated completion of the work, and failed to cooperate in one of the ensuing disciplinary investigations. Relator further alleged that this conduct adversely reflected on his fitness to practice law and was prejudicial to the administration of justice. Although the complaint was served on Tomson by certified mail, he failed to answer it or otherwise appear in these proceedings, and relator moved for default.

{¶ 3} A master commissioner appointed by the Board of Commissioners on Grievances and Discipline determined that the materials submitted in support of relator's motion for default were sufficient, found by clear and convincing

evidence that Tomson had committed the charged misconduct, and recommended that he be ordered to make restitution to the affected clients and suspended indefinitely from the practice of law in Ohio. The board adopted the master commissioner's findings of fact and misconduct and agreed with the recommendation for restitution, but concluded that Tomson's misconduct warranted permanent disbarment. On December 19, 2012, this court issued an order to show cause why the court should not confirm the board's recommendation and enter an order of discipline. No objections have been filed.

{¶ 4} We adopt the board's findings of fact and misconduct and find that permanent disbarment is the appropriate sanction for Tomson's misconduct.

## Misconduct

### Count One—The Limbach Matter

{¶ 5} In 2001, Craig Limbach was convicted of attempted rape, illegal use of a minor in nudity-oriented material, pandering sexually oriented material involving a minor, and other offenses. He was sentenced to an aggregate term of more than 45 years in prison. His convictions were affirmed on appeal. *See State v. Limbach*, 5th Dist. No. 2001CA00396, 2002-Ohio-3934, 2002 WL 1770536.

{¶ 6} In 2003, Limbach sought Tomson's assistance to pursue the reopening of his appeal and other postconviction relief, and in the winter of 2003-2004 he paid the $4,000 retainer Tomson required to begin the work. Tomson sent Limbach a letter in June 2004 stating that (1) he had completed 90 percent of the research, (2) he required an additional $4,000 to complete the research and prepare a brief and other pleadings, and (3) he would file the application and brief within 45 days of receiving the additional payment.

{¶ 7} When nothing had been filed by late November 2005, Limbach sent Tomson a letter inquiring about the delay. Tomson responded that (1) the prior ruling would be difficult to overcome, (2) he was confident that he would prevail in his efforts to reduce Limbach's sentence, (3) he would continue to

monitor cases decided by this court, and (4) he was confident that he would have something definitive to provide to Limbach in 30 to 45 days. Despite these representations, Tomson filed nothing in the next three years.

{¶ 8} In a February 2009 letter, Tomson told Limbach that he would visit him in prison during the last week of March with the final draft of the pleadings, but he failed to do so. Tomson sent another letter to Limbach in September 2009, stating, "I feel confident that I will be able to complete a final product and bring it to you before the end of November or sooner." In October 2010—11 months after Tomson last predicted a date of completion—Limbach sent a letter to Tomson complaining that he had paid thousands of dollars but that Tomson had not performed the promised work. After receiving no response to this letter, Limbach filed a grievance with relator in January 2011.

{¶ 9} Tomson's response to relator's initial letter of inquiry stated that he expected to complete and file a brief in Limbach's case no later than May 15, 2011. He did not file the seven-page application to reopen Limbach's appeal, however, until September 20, 2011—four months after the date that he had told relator that it would be filed and more than seven years after his client retained him to perform this work. The court of appeals ultimately denied the application for reopening.

{¶ 10} The board found that Tomson's conduct in the Limbach matter violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), DR 2-106(A) and Prof.Cond.R. 1.5(a) (both prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), DR 6-

101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) as charged in the complaint.[1] We adopt these findings of fact and misconduct.

*Count Two—The Welker Matter*

{¶ 11} Charles Welker was convicted of gross sexual imposition and rape and sentenced to 15 years in prison in November 1999. His convictions were affirmed on appeal. *See State v. Welker*, 8th Dist. No. 83252, 2004-Ohio-1132, 2004 WL 450336. In December 2004, his wife, Phyllis Welker, retained Tomson to pursue a reduction of his sentence. Phyllis Welker paid Tomson $5,200—$700 to evaluate the case and $4,500 to reopen the appeal or seek other postconviction relief. In a December 2005 letter, Tomson wrote that he would visit Welker in prison during the last week of March 2006 with the final draft of the pleadings, but he failed to do so.

{¶ 12} Charles Welker wrote to Tomson in January 2009 to request information about his case and to advise him that his wife had attempted, unsuccessfully, to reach Tomson by telephone. Charles Welker again wrote to inquire about the status of his case in July 2009. Tomson did not respond to either letter. Tomson did, however, respond to a third inquiry from Charles Welker, stating in a letter dated September 25, 2009, "I feel confident that I will be able to complete a final product and bring it to you before the end of November or sooner." Despite this representation, he did not visit Welker in prison.

---

1. Because Tomson's misconduct occurred both before and after the adoption of the Rules of Professional Conduct on February 1, 2007, relator charged him under the applicable rules of both the former Code of Professional Responsibility and the current Rules of Professional Conduct. To the extent that both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

{¶ 13} In July 2011, Phyllis Welker filed a grievance with relator. Although Tomson received the two letters of inquiry that relator sent by certified mail regarding this grievance, he never responded to them.

{¶ 14} Tomson appeared for his October 18, 2011 investigatory deposition pursuant to a subpoena duces tecum and testified that he would provide Welker's client file to relator, but he never did. He admitted that he had not filed any documents on Welker's behalf during the seven years that he represented him. With Welker's original prison sentence scheduled to expire in early 2013, it appeared unlikely at the time of the deposition that Welker would ever see any benefit from that representation. Nonetheless, Tomson testified that no refund was warranted.

{¶ 15} The board found that Tomson's conduct in the Welker matter violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c), DR 1-102(A)(5) and Prof.Cond.R. 8.4(d), and DR 1-102(A)(6) and Prof.Cond.R. 8.4(h), as well as DR 6-101(A)(3), 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client), and 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services), Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued), 1.3, and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). We adopt these findings of fact and misconduct.

**Sanction**

{¶ 16} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio

St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 17} The board found that Tomson received attorney fees in exchange for his agreement to seek postconviction relief on behalf of two clients. He made repeated promises to perform the contracted legal services and claimed to have performed substantial legal research on behalf of these clients. But after seven years, he had filed only a seven-page application to reopen one client's appeal and had filed nothing in the other client's case.

{¶ 18} As aggravating factors, the board found that Tomson acted with a dishonest or selfish motive, committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, and failed to make restitution to the affected clients. *See* BCGD Proc.Reg. 10(B)(1)(b), (d), (e), (g), and (i). The only evident mitigating factor is the absence of a prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(2)(a).

{¶ 19} In his motion for default, relator argued that an indefinite suspension from the practice of law is the appropriate sanction for Tomson's misconduct. The master commissioner adopted this recommendation but also suggested that Tomson should be ordered to make restitution of $8,000 to Limbach and $5,200 to Phyllis Welker before seeking reinstatement. In support of his recommendation, the master commissioner noted that an indefinite suspension is the presumptive sanction for attorneys who neglect client matters and fail to cooperate in the resulting disciplinary investigation. *Akron Bar Assn. v. Goodlet*, 115 Ohio St.3d 7, 2007-Ohio-4271, 873 N.E.2d 815, ¶ 20. The master commissioner then cited cases in which we have indefinitely suspended other attorneys for misconduct similar to Tomson's, including attorneys who also accepted retainers and then failed to perform the contracted work and failed to

cooperate in the ensuing investigation. *See, e.g., Columbus Bar Assn. v. Emerson*, 84 Ohio St.3d 375, 704 N.E.2d 238 (1999); *Cleveland Bar Assn. v. Davis*, 121 Ohio St.3d 337, 2009-Ohio-764, 904 N.E.2d 517.

{¶ 20} While the board agrees that Tomson should be ordered to make full restitution to Limbach and Phyllis Welker, it recommends that he be permanently disbarred from the practice of law in Ohio.

{¶ 21} We have found that Tomson has neglected the Limbach and Welker matters and that he has failed to cooperate in the ensuing investigation. In addition to this conduct, however, he has accepted thousands of dollars in fees from these clients and failed to perform the contracted work. Although he claims to have performed research on behalf of these clients, he testified at his deposition that he had not used common online research tools, such as Westlaw or Lexis, or reviewed any treatises that might have helped him formulate a strategy to pursue his clients' legal objectives. Instead, he read the weekly advance sheets published by the Ohio State Bar Association, waiting in vain for this court to develop case law that would advance his clients' objectives.

{¶ 22} Moreover, Tomson repeatedly told his clients that he was "confident" that he would have something to them within a definite time period— such as within 30 to 45 days—but he never met his projected completion dates. And at his deposition, he claimed that those projections were not promises to complete the clients' work in a certain time frame but were merely statements of his intentions that his clients mistook for promises. He explained that he intended to complete the work by those self-imposed deadlines but that he "could just never find the right case law" and that every time he would get ready to file something, he would decide that "it just wasn't good enough." Rather than seeking postconviction relief with the case law he had found, or telling his clients that he could not help them and suggesting that they seek new counsel, Tomson kept their money—more than $13,000 in all according to the board's report—and

strung them along for more than seven years. That he sees nothing wrong with his course of conduct is extremely troubling.

{¶ 23} In *Warren Cty. Bar Assn. v. Marshall*, 121 Ohio St.3d 197, 2009-Ohio-501, 903 N.E.2d 280, we permanently disbarred an attorney who accepted retainers totaling more than $5,000, neglected his clients' entrusted legal matters, and intentionally failed to carry out his contracts of employment for legal services and who then failed to cooperate in the ensuing disciplinary investigations. There were no mitigating factors in that case. *Id.* at ¶ 14. Aggravating factors included Marshall's two prior disciplinary offenses that resulted in separate two-year suspensions from the practice of law, his pattern of misconduct, his dishonesty, fraud, deceit, or misrepresentation to his clients about the status of their matters, his failure to refund unearned fees on request, and his failure to cooperate in the disciplinary investigation. *Id.* at ¶ 14, 18.

{¶ 24} In *Cleveland Metro. Bar Assn. v. Hildebrand*, 127 Ohio St.3d 304, 2010-Ohio-5712, 939 N.E.2d 823, ¶ 20, 22, we also disbarred an attorney who collected fees from clients and failed to perform the agreed-upon services, ignored his clients' inquiries about the status of their cases, ignored his clients' requests for refunds when it became apparent that he was not performing the contracted work, made false statements to the relator regarding his intentions to respond to the resulting grievances, and intentionally failed to cooperate in the disciplinary proceedings. We observed that " '[t]aking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client' " and stated that permanent disbarment is the presumptive sanction for such acts. *Id.* at ¶ 21, quoting *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16.

{¶ 25} We recognize that Tomson does not have a prior disciplinary record, as did Marshall and Hildebrand. However, we find that his offenses are comparable because he accepted thousands of dollars from the two affected

clients, failed to pursue their claims for postconviction relief as they sat in prison for more than seven years, and deceived them by representing that he was working to secure the reductions of their criminal sentences. Therefore, we agree that permanent disbarment is the appropriate sanction for Tomson's misconduct.

{¶ 26} Accordingly, William Leonard Tomson Jr. is ordered to make restitution of $8,000 to Limbach and $5,200 to Phyllis Welker and is permanently disbarred from the practice of law in Ohio. Costs are taxed to Tomson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

_____